The COMMONWEALTH OF PUERTO RICO, Plaintiff,

v.

Clifford ALEXANDER, Jr., et al., Defendants.

Civ. A. No. 76–1216.

United States District Court, District of Columbia.

Aug. 12, 1977.

---

Michael E. Veve, Washington, D. C., for plaintiff.

Earl Salo and John E. Varnum, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

WADDY, District Judge.

This is an action for declaratory and injunctive relief arising under the Federal Water Pollution Control Act Amendments of 1972[1] (FWPCA), 33 U.S.C. §§ 1251–1376, and the Puerto Rican Federal Relations Act of 1950 (FRA), 48 U.S.C. §§ 731–916. Plaintiff, the Commonwealth of Puerto Rico, seeks a determination of whether the FRA limits the federal government's FWPCA regulatory powers over the Commonwealth's unnavigable waters. More specifically, this Complaint alleges that Section 404 of the Water Pollution Act, 33 U.S.C. § 1344, and the regulations promulgated thereunder,[2] which provide for the issuance of permits to discharge dredged or fill material into the waters, are inapplicable to the Commonwealth in light of Sections 7 and 9 of the FRA, 48 U.S.C. §§ 747, 734, respectively.

This case is before the Court on defendants' motion to dismiss and cross motions of

---

1. Federal Water Pollution Control Act Amendments of 1972, Pub. L. No. 92–500 §§ 101 *et seq.*, 86 Stat. 816, *amending* 33 U.S.C. §§ 1151 *et seq.*, codified in 33 U.S.C. §§ 1251–1376.

2. 33 C.F.R. §§ 209.110–209.410 (1976), 40 Fed. Reg. 31320 (1975).

plaintiff and defendants for summary judgment.[3]

Defendants in this action are the Secretary of the Army and the Chief of the Army Corps of Engineers (Corps), who are responsible for issuing the FWPCA Section 404 discharge permits, and the Administrator of the Environmental Protection Agency, who has responsibility for the administration of the Water Pollution Act, 33 U.S.C. § 1251(d).

The Army Corps of Engineers has adopted regulations implementing its discharge permit responsibilities under FWPCA Section 404. The parties to this action are agreed that those regulations, specifically 33 C.F.R. § 209.120(d)(2) (1976), expand the Corps' jurisdiction under that section, titled "Navigable waters", to include areas which were previously considered to be unnavigable waters. In light of recent judicial decisions expanding the scope of "navigable" waters under the FWPCA[4] plaintiff does not challenge the Corps' authority to promulgate such regulations, but it does contend that Sections 7 and 9 of the Puerto Rican Federal Relations Act, 48 U.S.C. §§ 747, 734, respectively, make those regulations inapplicable to Puerto Rico's unnavigable waters.

It is Puerto Rico's contention that the Corps' regulations require plaintiff to obtain dredge and fill discharge permits from the federal government for bodies of water which are controlled by Puerto Rico, which have always been under Puerto Rican sovereignty, and over which the federal government and the Congress have no jurisdiction.

This is not an action which presents the Court with a specific body or bodies of water for a determination of whether the Corps' regulations require the plaintiff to

obtain the appropriate discharge permit. This is not an action for review of a denial by the Corps of a Puerto Rican permit application. Rather, this action is for a pre-enforcement review of federal regulations and the scope of those regulations as applied to the Commonwealth of Puerto Rico's unnavigable waters. Plaintiff is here seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1651.

The defendants respond by alternative motions to dismiss or for summary judgment. The Court considers first defendants' motion to dismiss this Complaint.

### Defendants' Motion to Dismiss

The federal defendants move to dismiss this action as unripe and not appropriate for judicial resolution, and because plaintiff lacks standing to bring this Complaint. It is their contention that judicial resolution at this point would involve the Court prematurely in resolving an abstract question, as no particular body of Puerto Rican waters is now before the Court for a focused determination of FWPCA applicability. Defendants submit that the Commonwealth is asking the Court to write a treatise on federal jurisdiction over Puerto Rican waters. Defendants further contend that plaintiff has failed to show any real or immediate injury since no one has been denied a dredge permit, or been required to apply for one. They conclude that this Court lacks jurisdiction over the subject matter of this action.

The plaintiff, opposing the motion to dismiss, argues that the administrative actions of the Corps, for all intents and purposes, have concluded, and all that remains at issue is the Commonwealth's compliance

---

3. All defendants moved for summary judgment by oral motion at the hearing, relying upon their memorandum submitted in opposition to plaintiff's motion for summary judgment. Plaintiff noted no objection, and the Court proceeded to hear this case on plaintiff's motion for summary judgment and defendants' motion in the alternative to dismiss or for summary judgment.

4. *United States v. Ashland Oil and Transportation Co.*, 504 F.2d 1317 (6th Cir.1974), *Natural Resources Defense Council, Inc. v. Callaway*, 392 F.Supp. 685 (D.D.C.1975), *P.F.Z. Properties, Inc. v. Train*, 393 F.Supp. 1370 (D.D.C. 1975), *United States v. Phelps Dodge Corp.*, 391 F.Supp. 1181 (D.Ariz.1975), *Leslie Salt Co. v. Froehlke*, 403 F.Supp. 1292 (N.D.Cal.1974).

with the Corps' regulations. No factual determinations remain for this Court; the sole question being a legal one—the power of the defendants and of the Congress to regulate Puerto Rico's unnavigable waters in light of the Federal Relations Act. Insofar as this action seeks, *inter alia*, a declaratory judgment of federal administrative regulatory jurisdiction, plaintiff contends that the concrete sharpening of issues necessary for judicial resolution exists right now, and that this case is ripe for decision.

Plaintiff alleges that the expenses required to comply with the FWPCA regulations are its injury in fact. It maintains that it must now establish procedures consistent with the Corps' regulations—present operations must be revised, maintenance schedules changed, operational methods and procedures altered, pending and future projects delayed or aborted—all at considerable expense and inconvenience to plaintiff. It also claims that such expenditures are irreversible and irretrievable.

The Supreme Court has provided considerable guidance in the area of pre-enforcement review of agency regulations. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) concerned pre-enforcement review of certain HEW prescriptive drug labeling regulations. The regulations were definitive and compliance was expected. They had the status of law and, as in this case, violations gave rise to civil and criminal penalties. The Court in *Abbott Laboratories* stated that:

These regulations purport to give an authoritative interpretation of a statutory provision that has a direct effect on the day-to-day business of all prescription drug companies; its promulgation puts petitioners in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate. 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681.

In that case petitioners faced the choice of complying with the regulations and incurring the costs of changing their promotional materials and labeling, or facing the risk of prosecution by following their present course. The Court rejected the government's contention that mere financial loss couldn't justify a judicial challenge:

But there is no question in the present case that petitioners have sufficient standing as plaintiffs: the regulation is directed at them in particular; it requires them to make *significant changes in their everyday business practices*; if they fail to observe the Commissioner's rule they are quite clearly *exposed* to the imposition of strong sanctions. 387 U.S. 136, 154, 87 S.Ct. 1507, 1518, 18 L.Ed.2d 681 (Emphasis Supplied).

The same considerations as in *Abbott Laboratories* are apparent in Puerto Rico's claim, plus an additional argument which significantly strengthens plaintiff's jurisdictional posture. The essence of this dispute is an apparent conflict between the extent of federal jurisdiction and the sovereignty of the Commonwealth of Puerto Rico. Puerto Rico argues, and the Court is in agreement, that the Commonwealth, by merely requesting from the federal government a permit for dredged or fill material to be discharged into its unnavigable waters, sustains injury to its claim of sovereignty over those unnavigable waters. Although a portion of the injury here is to the Commonwealth's sovereignty, a concept of freedom from external controls which operates to regulate the formal manner in which one political entity may interact with another such entity, that injury is nonetheless real and immediate.

This Court does not intend to write, nor does this case require, a treatise on the federal jurisdiction over Puerto Rican waters. The Declaratory Judgment Act appears well suited to this type of pre-enforcement regulatory review.[5] Later piece-

---

5. "The statute providing for declaratory judgments meets a real need and should be liberally construed to accomplish the purpose intended, i. e. to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Beacon Construc-*

meal resolution of this controversy through individual enforcement proceedings would be costly and inefficient for all the parties here concerned. *Gardner v. Toilet Goods Association, Inc.*, 387 U.S. 167, 173–4, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

The Corps' regulations are, for the purposes of this litigation, finalized in their intent and application as to the Commonwealth. The claims have sufficiently ripened so as to present this Court with a record which does reflect a sharpening of the issues as is required for judicial resolution of the controversy. Plaintiff has alleged injury in fact, giving plaintiff standing to bring this action. Therefore, for all of the foregoing reasons, defendants' motion to dismiss for lack of jurisdiction will be denied, and the Court will proceed to consider the merits of this case.

### The Case on the Merits

This case is now before the Court on the parties' cross motions for summary judgment. The parties agree that the Army Corps of Engineers' regulations implementing Section 404 of the Federal Water Pollution Control Act, as amended 1972, 33 U.S.C. § 1344, expand the jurisdiction of the Corps to include the unnavigable waters of the Commonwealth of Puerto Rico. Though this broadening of federal regulatory power is not, in itself, at issue here, plaintiff does contend that the regulations exceed Congressional power to regulate the affairs of Puerto Rico insofar as the FWPCA is applied to the unnavigable waters of Puerto Rico.

Plaintiff argues that Puerto Rico is *sui generis*, neither a state nor a territory, but something between the two, whose relationship with the United States is derived from and defined by the Puerto Rican Federal Regulations Act of 1950. Puerto Rico contends that its unnavigable waters are beyond the jurisdiction of the federal government and outside the scope of the legislative regulatory powers of the Congress. Plaintiff relies upon its reading of Section 7

of the FRA, 48 U.S.C. § 747, as a grant of Puerto Rican sovereignty over the island's unnavigable waters. That section provides, in pertinent part:

> All property which may have been acquired in Puerto Rico by the United States under the cession of Spain . . . in any . . . . unnavigable streams and the beds thereof, . . . is placed under the control of the government of Puerto Rico, to be administered for the benefit of the people of Puerto Rico; and the Legislature of Puerto Rico shall have authority, *subject to the limitations imposed upon all its acts*, to legislate with respect to all such matters as it may deem advisable. 48 U.S.C. § 747 (Emphasis Supplied).

Plaintiff further contends that its unnavigable waters are areas of purely local concern, and that federal statutory regulation of those areas is "locally inapplicable" under Section 9 of the FRA, 48 U.S.C. § 734. The relevant portion of that section provides:

> The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States, . . . 48 U.S.C. § 734.

In *Caribtow Corp. v. Occupational Safety & Health Review Commission*, 493 F.2d 1064 (1st Cir.1974) there was a judicial recognition and interpretation of Section 9 of the FRA wherein the Court found that federal legislation generally applies to Puerto Rico, with the limited exception of those federal statutes found to be locally inapplicable.

Defendants take the position that, for purposes of federal legislation, Puerto Rico is to be treated as if it were a state, as opposed to a territory. In support of FWPCA application to Puerto Rico defendants note that the Act, as amended, represents the Congressional response to a problem of national scope and national effect

tion Company, Inc. v. Matco Electric Company, Inc.*, 521 F.2d 392, 397 (2d Cir.1975), quoting

from *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937).

upon the nation's commerce and navigation. They argue that under the terms of Section 9 of the FRA, the FWPCA and its attendant regulations are not "locally inapplicable", thus squarely joining the issue.

The question for decision upon these cross motions for summary judgment is whether, in light of Sections 7 and 9 of the Federal Relations Act, the Federal Water Pollution Control Act Amendments of 1972 and the regulations promulgated thereunder are to be applied to the unnavigable waters of the Commonwealth of Puerto Rico.

The plaintiff and the defendants both rely upon *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) in support of their respective positions on the status of Puerto Rico *vis-a-vis* the United States. *See Calero-Toledo*, 416 U.S. at 670–74, 94 S.Ct. 2080. Probably the only reliable statement to be drawn from that case and from the parties' briefs on this point is that the exact nature of the association between the United States and the Commonwealth of Puerto Rico has remained unclear.[6]

It is not the purpose of this Court, nor is it necessary for decision of this case, to either attempt to resolve or to now supplement the semantical state/territory controversy which surrounds the Island of Puerto Rico. The proper regulatory role of the federal government with respect to Puerto Rican unnavigable waters is apparent from the FWPCA itself, and the above portions of the Federal Relations Act.[7]

It has been held by Judge Robinson of this Court in *Natural Resources Defense Council, Inc. v. Callaway*, 392 F.Supp. 685 (D.D.C.1975) that the Congress by defining the term "navigable waters" in Section 502(7) of the FWPCA to mean "the waters of the United States, including the territorial seas," [8] "asserted federal jurisdiction over the nation's waters to the maximum extent permissible under the Commerce Clause of the Constitution." Thus, the term navigable waters is not limited to the traditional tests of navigability. 392 F.Supp. 685, 686. Plaintiff here recognizes the thrust of Judge Robinson's decision, but maintains that, as to the Commonwealth, that definition of navigable waters encroaches upon purely local concerns which are preserved to the Commonwealth by the FRA.

The report of the Senate Public Works Committee indicates recognition of the need for an expanded definition of navigable waters:

> Through a narrow interpretation of the definition of interstate waters the implementation [of the] 1965 Act was severely limited. Water moves in hydrologic cycles and it is essential that discharge of pollutants be controlled at the source.[9]

It should at this time be beyond dispute that effective pollution control necessitates regulating pollution at its source. From a purely ecological point of view, the introduction of pollutants into any body of water, no matter how small, not only affects that water body, but also affects larger bodies of water downstream. Part of an aquatic ecosystem cannot be degraded or destroyed without adversely affecting the remaining parts of that system.[10]

---

**6.** Helfeld, *How Much of the Federal Constitution Is Likely to be Held Applicable to Puerto Rico?*, 39 Rev.Jur.U.P.R. 169 (1970).

**7.** The definitional section of the 1972 amendments to the FWPCA provides that:
> Except as otherwise specifically provided, when used in this chapter:
>     *   *   *   *   *   *
> (3) The term "State" means a State, the District of Columbia, the Commonwealth of Puerto Rico, . . .
> 33 U.S.C. § 1362(3).
> The Congressional intent appears to be that the Federal Water Pollution Control Act is not locally inapplicable to the Commonwealth of Puerto Rico; indeed, Puerto Rico is to be treated as a state for purposes of the FWPCA 1972 amendments.

**8.** 33 U.S.C. § 1362(7).

**9.** S. Rep. No. 92–414, 92d Cong., 1st Sess. 77 (1971), U.S. Code Cong. & Admin. News 1972, p. 3668.

**10.** Caplin, *Is Congress Protecting Our Water? The Controversy Over Section 404, Federal Water Pollution Control Act Amendments of 1972.*, 31 U. Miami L.Rev. 445 (1977).

Since water moves in hydrologic cycles, real protection of water must include protection of the complete aquatic system. The defendants argue and this Court agrees that to treat the navigable waters of Puerto Rico as waters of the United States subject to federal pollution controls, while treating the Puerto Rican unnavigable waters as local concerns not subject to federal anti-pollution regulation is impractical and non-sensible. Following on the heels of *Natural Resources Defense Council, supra,* it would be inconsistent to permit pollution, or to at least deny federal regulatory jurisdiction, in the upstream unnavigable waters while attempting to federally regulate the downstream waters as waters of the United States.

This same conclusion was viewed with approval in *United States v. Ashland Oil and Transportation Co.,* 504 F.2d 1317 (6th Cir. 1974). There the Court held that the FWPCA 1972 amendments were intended to control both discharges of pollutants directly into navigable waters and discharges of pollutants into nonnavigable tributaries which flow into navigable water. In so holding the Court stated that:

> It would, of course, make a mockery of those powers if its [the United States'] authority to control pollution was limited to the bed of the navigable stream itself. The tributaries which join to form the river could then be used as open sewers as far as federal regulation was concerned. The navigable part of the river could become a mere conduit for upstream waste.

> Such a situation would have vast impact on interstate commerce. States with cities and industries situated upstream on the nonnavigable tributaries of our great rivers could freely use them for dumping raw sewage and noxious industrial wastes . . . . 504 F.2d 1317, 1326.

This conclusion appears to the Court to be so clearly logical and plainly sensible that it is compelled to reach a similar result in this case.

Federal water pollution control is a national problem and the Congress has set national goals. 33 U.S.C. § 1251. The definition of navigable waters, as already discussed, has been extended to the full extent permitted by the Commerce Clause of the Constitution. This Court holds, as did the Court in *Ashland Oil and Transportation Co., supra,* that the regulation of navigable waters without concurrent regulation of the unnavigable waters is inconsistent with the Congressional intent and policy of the FWPCA 1972 amendments.

■ The Court finds that the FWPCA, as amended, does not fall within the limited exception for locally inapplicable federal statutes as articulated in *Caribtow Corp., supra.* Therefore, the Federal Water Pollution Control Act, as amended, does apply to the Commonwealth of Puerto Rico, and summary judgment must be denied to the plaintiff, and entered in favor of the defendants as against the plaintiff.

### JUDGMENT

This action having come on for hearing before this Court on defendants' motion to dismiss and the parties' cross motions for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and the Court having considered the various memoranda filed in support of and in opposition to said motions, the pleadings, affidavits and exhibits, the arguments of counsel at the hearing, and the entire record herein, and for the reasons stated in the memorandum opinion filed by the Court this same date, the Court finds that is has jurisdiction of the parties and subject matter and that there is no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law, therefore, it is by the Court this 12th day of August, 1977,

ADJUDGED, ORDERED and DECREED that defendants' motion to dismiss for lack of subject matter jurisdiction be, and the same hereby is, denied, and it is further

ADJUDGED, ORDERED and DECREED that plaintiff's motion for summary judgment be, and the same hereby is, denied, and it is further

ADJUDGED, ORDERED and DECREED that defendants' motion for summary judgment be, and the same hereby is, granted, and judgment be, and the same hereby is, entered in favor of the defendants against the plaintiff.