**UNITED STATES of America, Plaintiff,**

v.

**COMMONWEALTH OF PUERTO RICO and Environmental Quality Board, Defendants.**

Civ. No. 82–0726 (TR).

United States District Court, D. Puerto Rico.

Nov. 16, 1982.

Raymond L. Acosta, U.S. Atty., Hato Rey, P.R., for plaintiff.

Gerardo A. Carlo, Héctor Reichard de Cardona, Secretary of Justice, U.S. Dept. of Justice, San Juan, P.R., for defendants.

DECISION AND ORDER

TORRUELLA, Chief Judge.

This case is the latest round in an ongoing dispute between the Commonwealth of Puerto Rico and others and the United States Navy over the use of certain areas in

the neighboring Island of Vieques for military maneuvers and bombardment. See *Romero-Barceló v. Brown,* 478 F.Supp. 646 (D.C.P.R., 1980); aff'd in part, vacated and remanded in part, 643 F.2d 835 (C.A. 1, 1981); vacated and remanded in part *Weinberger v. Romero-Barceló,* —— U.S. ——, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). It is in fact a direct by-product of a finding by this Court in the *Romero-Barceló* case to the effect that some of these activities violated the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. 1251, *et seq.* (1976 ed. and Supp. III), and an order implementing said finding requiring that the Navy file for and seek a National Pollutant Discharge Elimination System Permit (NPDES) to cover the accidental and/or intentional dropping of ordnance into the waters surrounding Vieques. *Romero-Barceló v. Brown,* 478 F.Supp. at 663–664, 708.

Pursuant to said decision the Navy on December 29, 1979 filed for such a permit with the Environmental Protection Agency (EPA). Thereafter the EPA requested that the Environmental Quality Board of Puerto Rico (EQB), the agency charged with overseeing compliance with Puerto Rico's environmental laws,[1] issue a Water Quality Certificate (WQC), which is a *sine qua non* requirement to the issuance by EPA of a NPDES. See 33 U.S.C. 1341(a)(1). After diverse procedural interchanges, including the holding of public hearings, the EQB finally denied the WQC on February 26, 1982.

This suit challenges the validity of said administrative action and seeks equitable and declaratory relief therefrom.

Defendants Commonwealth of Puerto Rico and EQB have moved this Court for dismissal of the action alleging lack of jurisdiction and the failure to state a claim upon which relief can be granted. The contentions as to both issues are largely repetitive of each other. We shall thus concentrate on the jurisdictional questions, which of course are basic to further consideration of this case.

The crux of Defendants' contention is their allegation to the effect that the FWPCA requires that Plaintiffs litigate the matters raised in this action within the structure of the Commonwealth's administrative-judicial system[2] rather than in the Federal courts. As basis for this proposition Defendants cite 28 U.S.C. 1345 which reads as follows:

"*Except as otherwise provided by Act of Congress,* the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." (Emphasis supplied).

Defendants claim that the FWPCA is such an excepting provision wherein Congress has directed the Federal government to litigate its rights within the State's administrative and/or court systems. Plaintiff, of course, is of the view that jurisdiction lies in this Court and that no Act of Congress, including the FWPCA, has created any exception to Section 1345, particularly under the circumstances surrounding this action.

The issues raised appear to be of first impression.

Certain principles are clear, however. Leaving aside for the moment the exception expressed by the first part of Section 1345, there is established by said statute an unequivocal grant of jurisdiction to the district courts which arises from the mere presence of the United States as a party to a civil action, suit or proceeding. *United States v. Marchetti,* 466 F.2d 1309, 1313 (C.A. 4, 1972). Such grant is without regard to the subject matter of the litigation. *Williams v. United States,* 42 F.R.D. 609 (S.D.N.Y., 1967). Thus, by this provision Congress enunciates a strong policy

1. 12 LPRA 1131, 1135.

2. Any party adversely affected by an order of EQB may, within thirty (30) days following notice thereof, seek review of said order by filing an action in the Superior Court of Puerto Rico, San Juan Part. 12 LPRA 1134(d)(2). A detailed procedure is established thereafter, ending with discretionary review by writ of certiorari before the Supreme Court of Puerto Rico. 12 LPRA 1134(g).

decision to the effect that the United States be allowed to litigate in its own courts those issues which affect its interests. The strength of this policy decision and the importance attached to it by Congress is reflected in the total absence of *any* legislation expressly excepting the United States from the application of 28 U.S.C. 1345.[3]

Furthermore, those cases that have touched on possible exceptions have indicated that any exception to the general rule of Section 1345 must be clear and unequivocal. Thus in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 806, 96 S.Ct. 1236, 1240, 47 L.Ed.2d 483 (1976), the Supreme Court said:

"... '[T]he force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation.' "

And the scant legislative history of this Section tells us that:

"The phrase 'Except as otherwise provided by Act of Congress', at the beginning of the section was inserted to make clear that jurisdiction exists generally in district courts in the absence of *special provisions* conferring it elsewhere." H.Rep. 308, Revisions of Title 28, United States Code, 80th Cong., 1st Sess., at A121 (emphasis supplied).

■ The issue boils down to determining whether the FWPCA contains any such "special provision." A section-by-section analysis of the relevant parts of the FWPCA fails to reveal such a provision.

The FWPCA is part of a comprehensive legislative scheme for the prevention and control of water pollution throughout the jurisdiction of the United States. 33 U.S.C.A. Chapter 26, *et seq.* Prevalent throughout this legislation is the creation of various causes of action and proceedings in the United States courts, sometimes allowing for concurrent jurisdiction in the state courts, but never to the exclusion of the federal forum. Thus under Section 1319, both civil and criminal enforcement actions for violation of permits issued by the States under approved permit programs are filed and prosecuted in the United States district courts (see 33 U.S.C. 1319(a), (b), (c), and (d)), as are civil actions to restrain violations of regulations controlling marine sanitation devices, as are their criminal prosecution (see 33 U.S.C. 1322(i) and (j)), enforcement actions of NPDES's (see 33 U.S.C. 1342(i)), citizen suits against any person violating effluent standards or against the Administrator of EPA for failure to perform mandatory acts or duties (see 33 U.S.C. 1365(a)), and civil actions by State Governors against the Administrator of EPA to enforce effluent standards or limitations as a result of violations emanating from other States (see 33 U.S.C. 1365(h)). Furthermore, the various administrative proceedings before the Administrator are reviewable judicially only by appeal to the various Circuit Courts of Appeal of the United States. See 33 U.S.C. 1369(b)(1).

Lastly, we have 33 U.S.C. 1323(a), a pivotal provision in this scheme, which bears close scrutiny.[4] To begin with there is a

---

3. The so-called McCarran Amendment, 43 U.S.C. 666(a), allows the United States to be named a party *defendant* in state court in actions involving certain water rights issues. Even said statute does not totally divest federal courts of jurisdiction over water rights issues when the United States is a party plaintiff. Rather it establishes concurrent state court jurisdiction under certain circumstances. *Cappaert v. United States,* 426 U.S. 128, 145–146, 96 S.Ct. 2062, 2072–2073, 48 L.Ed.2d 523 (1976).

4. In its pertinent parts 33 U.S.C. 1323(a) reads:
"(a) Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or

facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatso-

waiver of immunity by the Federal Government, thus allowing application to its facilities and activities of State and local water pollution "requirements, administrative authority, and process and sanctions" to the same extent as any non-governmental entity. There is explanatory language in the statute as to what is included within said provision. The first inclusion is "any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever)." See 33 U.S.C. 1323(a)(A). Also included is "... the exercise of any ... State, or local administrative authority, and ... any process and sanctions, ... enforced in ... State, or local courts or in any other manner." See 33 U.S.C. 1323(a)(B) and (C). What is meant by these inclusions?

The FWPCA as it existed prior to the 1977 amendments did not contain these inclusions but rather limited itself to the first sentence of 33 U.S.C. 1323(a). See Pub.L. 92–500, § 2, 86 Stat. 875. The Supreme Court, in *EPA v. State Water Resources Control Board,* 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976), held that said language only obligated the Federal Government to complying with the substantive provisions of State water pollution laws, but not with the procedural requirements of State legislation such as the obtention of a state permit. This interpretation resulted in the 1977 amendments which added the aforementioned inclusions. See Pub.L. 95–217, §§ 60, 61(a), 91 Stat. 1597, 1598. In the process of its passage the Senate expressed its displeasure with *EPA v. State*

*Water Resources Control Board,* supra, by saying in its report:

"The act has been amended to indicate unequivocally that all Federal facilities and activities are subject to all of the provisions of State and local pollution laws. Though this was the intent of the Congress in passing the 1972 Federal Water Pollution Control Act Amendments, the Supreme Court, encouraged by Federal agencies, has misconstrued the original intent.

Since the substantive requirements of the act and of State and local law would be unenforceable unless procedural provisions were also met, section 313 is amended to specify that, as in the case of air pollution, a Federal facility is subject to any Federal, State, and local requirement respecting the control or abatement of water pollution, both substantive and procedural, to the same extent as any person is subject to these requirements. This includes, but is not limited to, requirements to obtain operating and construction permits, reporting and monitoring requirements, any provision for injunctive relief and such sanctions imposed by a court to enforce such relief, and the payment of reasonable service charges..."

See Senate Report No. 95–370, p. 67; 1977 U.S.Code Cong. and Admin.News, p. 4392. Thereafter, however, this section was modified in conference to its present version, which provides for "removing to the appropriate Federal district court *any proceeding* to which the department, agency or instrumentality... is subject pursuant to this section..." (33 U.S.C. 1323) (emphasis supplied). The conference report states:

---

ever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanctions, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law. Nothing in this section shall be construed to prevent any department, agency, or instrumentality of the Federal Government, or any officer, agent, or employee thereof in the performance of his official duties, from removing to the appropriate Federal district court any proceeding

to which the department, agency, or instrumentality or officer, agent, or employee thereof is subject pursuant to this section, and any such proceeding may be removed in accordance with section 1441 et seq. of Title 28. No officer, agent, or employee of the United States shall be personally liable for any civil penalty arising from the performance of his official duties, for which he is not otherwise liable, and the United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court...."

"Senate amendment

This section clarifies section 313 of the Act to provide that all Federal facilities must comply with all substantive and procedural requirements of Federal, State, or local water pollution control laws. It also eliminates the exception for Federal agencies from the State certification of activities under section 401.

. . . . .

Conference substitute

The conference substitute is essentially the same as the Senate amendment revised to conform with a comparable provision in the Clean Air Act and with the additional requirement that *any action or other judicial proceeding to which this provision applies may be removed* by the Federal department, agency, instrumentality, officer, agent, or employee to the appropriate district court of the United States...

*It is anticipated that nothing in this section will prevent any action or other proceeding to which this section applies from being removed by the appropriate department, agency, instrumentality, officer, agent, or employee* of the United States to the district court of the United States for the district and division embracing the place where the action or other proceeding is pending." (Emphasis supplied).

See Conference Report, House Report No. 95–830, p. 93–94; 1977 U.S.Code Cong. and Admin.News, p. 4468–4469.

 Since it is clear that Plaintiff's action before the EQB was, by reason of the Court's Order in *Romero Barceló v. Brown*, supra, as well as the mandate of 28 U.S.C. 1323(a), "... [a] proceeding to which the department ... [*was*] subject[*ed*] pursuant to ..." Section 1323(a), it would appear that such a proceeding is within the removal provisions of that statute. Section 1323(a) however, refers us to the removal procedures contained in 28 U.S.C. 1441 *et seq.* This procedure runs into problems as far as this case is concerned as it is well-established that removal is only available to a *defendant* in a state *court* action. *Chicago,*

*R.I. & P.R. v. Stude,* 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317 (1954). The United States is not, at this stage, a *defendant* in the EQB proceedings, but rather a petitioner before an *administrative* body, seeking a permit. Cf. *Chicago, R.I & P.R. Co. v. Stude,* supra. See *Volkswagen de Puerto Rico Inc. v. Puerto Rico Labor Relations Board,* 454 F.2d 38 (C.A.1, 1972). Although this Court may realign parties in accordance with Federal law to determine where the true interest of the parties lies, *Chicago, R.I. & P.R. Co. v. Stude,* supra, 346 U.S. at 580, 74 S.Ct. at 294, such a procedure is presently of doubt for validity in this case. Furthermore, considering that Plaintiff herein has made no claim for removal but rather has filed an original action, convering this action into a removal proceeding would strain judicial inventiveness to the breaking point.

The importance of this section and the removal procedure therein established, however, lies in the fact that the very section which requires Federal compliance with State water pollution laws also continues the tenor of the rest of the Statute to the effect that *court* action shall be primarily, and at least concurrently, in the Federal courts. There is no question under the removal provision established in Section 1323(a), that if the EQB commenced enforcement proceedings against Plaintiff for failure to comply with the Commonwealth laws wherein the WQC is sought, that removal could be had to this Court. The issue thus narrows down to determining whether the United States must wait for the EQB to take such action based on this refusal to issue the WQC, before the United States can remove to this Court, or whether the United States can move first by bringing this affirmative action challenging the refusal of the WQC.

We see nothing in the amended Section 1323(a) to prevent this latter approach. The legislative history of the amendment, previously quoted, was intended to correct the failure of the Federal agencies *to file for a permit.* Nothing in that history reveals a requirement to the effect that the United States *litigate refusal to issue the*

*permit* in the state court forums. Absent such a specific requirement the general rule granting the Government the right to litigate in Federal court cannot be affected.

This result is particularly appropriate in the present action when we consider that it was EQB who, as one of the plaintiffs in *Romero-Barceló v. Brown,* supra, first sought to litigate before this Court many of the matters which are now being re-litigated in the proceedings before it, by substantially the same parties as in the *Romero-Barceló* case. Furthermore, because this Court retains supervisory jurisdiction over the outstanding remedies which remain to be complied with in *Romero-Barceló v. Brown,* supra, the possibility of conflicting judicial interpretations between the Federal and State courts on matters which are *sub-judice* before this Court is to be avoided absent a clear Congressional mandate to the contrary.

We thus conclude that the FWPCA does not provide an exception to the general rule in 28 U.S.C. 1345 granting jurisdiction to this Court over the present controversy, and that the complaint states a cause of action upon which relief may be granted.

Defendants' Motion to Dismiss is DENIED.

The Court, however, is of the opinion that the issues raised by this opinion qualify for interlocutory appeal under 28 U.S.C. 1292(b) and hereby informs the parties that it is willing to so certify if a request is made for appeal of this decision within the next twenty (20) days.

IT IS SO ORDERED.