**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**Manuel RIVERA TORRES,**
**Defendant, Appellant.**

**No. 87–1186.**

United States Court of Appeals,
First Circuit.

Heard June 5, 1987.
Decided Aug. 14, 1987.

**152**

Edelmiro Salas Garcia with whom Ricardo R. Perez Pietri, was on brief, for defendant, appellant.

Sarah P. Robinson, Dept. of Justice, with whom Robert L. Klarquist, Dept. of Justice, F. Henry Habicht II, Asst. Atty. Gen., Daniel F. Lopez-Romo, U.S. Atty., and Eduardo E. Toro Font, Asst. U.S. Atty., were on brief, for plaintiff, appellee.

Before COFFIN, DAVIS* and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This interlocutory appeal from an injunction issued to enforce violations of the Fed

* Of the Federal Circuit, sitting by designation.

Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*, commonly known as the Clean Water Act (CWA), raises three issues: (1) whether the Puerto Rico Federal Relations Act, 48 U.S.C. §§ 731 *et seq.* (FRA), precludes the application of the CWA in Puerto Rico, (2) whether the pendency of certain proceedings before the courts of the Commonwealth of Puerto Rico deprives the United States District Court for the District of Puerto Rico of jurisdiction to entertain a suit for violation of the CWA, and (3) whether appellant can claim a "taking" of his property in violation of his constitutional rights by reason of the designation of part of his property as a "wetland" under the CWA. We conclude that the district court properly complied with the requirements for the issuance of a preliminary injunction, *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981), and that appellant has failed to carry the "heavy burden of proving that the district court abused its discretion." *Commonwealth of Massachusetts v. Watt*, 716 F.2d 946, 947–948 (1st Cir.1983).

Appellant owns three parcels of land in Punta Picúa, Rio Grande, Puerto Rico, located on the northeastern coast of the island. Because the United States Corps of Engineers (Corps) concluded that he was engaged in the filling of certain mangrove areas located on his property, deemed "wetlands" by the Corps, without a permit, various unsuccessful cease and desist orders were issued against him. Thereafter the Corps brought an action to restrain appellant's activities, to force him to restore those areas into which he had deposited fill, and to pay civil penalties for his violations of the CWA. The district court issued a temporary restraining order, and thereafter, the preliminary injunction subject of this appeal, 656 F.Supp. 251.

*The Puerto Rico Federal Relations Act (FRA)*

It is appellant's contention that Sections 7 and 8 of the FRA, 48 U.S.C. §§ 747, 749, preclude the application of the CWA in

Puerto Rico. Pursuant to Section 7 of the FRA, 48 U.S.C. § 747, Congress transferred ownership to Puerto Rico of certain specified public assets and domains acquired in Puerto Rico by the United States under the cession of Spain resulting from the Spanish-American War. Furthermore, it authorized the Legislature of Puerto Rico, "subject to the limitations imposed upon all its acts, to legislate with respect to all such matters as it may deem advisable." [1]

In Section 8 of the FRA, 48 U.S.C. § 749, "[t]he harbor areas and navigable streams and bodies of water ... in and around ... Puerto Rico ... owned by the United States on March 2, 1917, and not reserved by the United States for public purposes, [were] placed under the control of the government of Puerto Rico, to be administered in the same manner and subject to the same limitations as the property enumerated in [Section 7]." [2] It further provided that "[a]ll laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, *except so far as the same may be locally inapplicable,* shall apply to" Puerto Rico and its waters. *Id.*

1. Section 7, 48 U.S.C. § 747 (as amended Mar. 12, 1980, Pub.L. No. 96–205) reads:

   All property which may have been acquired in Puerto Rico by the United States under the cession of Spain in the treaty of peace entered into on the 10th day of December, 1898, in any public bridges, road houses, water powers, highways, unnavigable streams and the beds thereof, subterranean waters, mines or minerals under the surface of private lands, all property which at the time of the cession belonged, under the laws of Spain then in force, to the various harbor works boards of Puerto Rico, all the harbor shores, docks, slips, reclaimed lands, and all public lands and buildings not reserved by the United States for public purposes prior to March 2, 1917, is placed under the control of the government of Puerto Rico, to be administered for the benefit of the people of Puerto Rico; and the Legislature of Puerto Rico shall have authority, subject to the limitations imposed upon all its acts, to legislate with respect to all such matters as it may deem advisable. Notwithstanding any other provision of law, as used in this section "control" includes all right, title, and interest in and to and jurisdiction and authority over the aforesaid property and includes proprietary rights of ownership, and the rights of management, administration, leasing, use, and development of such property.

2. Section 8, 48 U.S.C. § 749 (as amended Mar. 13, 1980, Pub.L. No. 96–205) reads:

   The harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters, owned by the United States on March 2, 1917, and not reserved by the United States for public purposes, are placed under the control of the government of Puerto Rico, to be administered in the same manner and subject to the same limitations as the property enumerated in sections 747 and 748 of this title. All laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, except so far as the same may be locally inapplicable, shall apply to said island and waters and to its adjacent islands and waters. Nothing in this chapter contained shall be construed so as to affect or impair in any manner the terms or conditions of any authorizations, permits, or other powers lawfully granted or exercised in or in respect of said waters and submerged lands in and surrounding said island and its adjacent islands by the Secretary of the Army or other authorized officer or agent of the United States prior to March 2, 1917. Notwithstanding any other provision of law, as used in this section (1) "submerged lands underlying navigable bodies of water" include lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide, all lands underlying the navigable bodies of water in and around the island of Puerto Rico and the adjacent islands, and all artificially made, filled in, or reclaimed lands which formerly were lands beneath navigable bodies of water; (2) "navigable bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters" extend from the coastline of the island of Puerto Rico and the adjacent islands as heretofore or hereafter modified by accretion, erosion, or reliction, seaward to a distance of three marine leagues; (3) "control" includes all right, title, and interest in and to and jurisdiction and authority over the submerged lands underlying the harbor areas and navigable streams and bodies of water in and around the island of Puerto Rico and the adjacent islands and waters, and the natural resources underlying such submerged lands and waters, and includes proprietary rights of ownership, and the rights of management, administration, leasing, use, and development of such natural resources and submerged lands beneath such waters.

**154**

(emphasis supplied); *see* Section 9 of the FRA, 48 U.S.C. § 734.[3]

The CWA[4] has as its objective to "restore and maintain the chemical, physical and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), in support of which it prohibits the discharge of any pollutant into the navigable waters, unless a permit has been granted by the Corps. 33 U.S.C. §§ 1311(a), 1362(12). Rock and sand fill is included within the statutory definition of "pollutant." 33 U.S.C. § 1362(6). The CWA defines "navigable waters" as "the waters of the United States, including the territorial seas." 33 U.S.C. 1362(7). Congress intended said term to be given "the broadest constitutional interpretation." Conference Report on Section 2770, reprinted in 1 *A Legislative History of the Water Pollution Control Act Amendments of 1972,* at 178. Thus, this term has been held to include wetlands adjacent to such navigable waters. *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 914–917 (5th Cir.1983); *United States v. Riverside Bayview Homes,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). *See* 33 C.F.R. § 323(c). In defining the term "State," the CWA included "the Commonwealth of Puerto Rico" within its circumscription. 33 U.S.C. § 1362(3).

The crux of appellant's argument is that the CWA is "locally inapplicable" because the Commonwealth of Puerto Rico has enacted legislation which supersedes the CWA. It is also appellant's contention that Sections 7 and 8 of the FRA constitute a "complete delegation of power to the government of Puerto Rico for the sole exercise of jurisdiction and authority to resolve all local matters relative to [its navigable and non-navigable waters]." Appellant's Brief, at 7.

We begin with the proposition that Congress can, pursuant to the plenary powers conferred by the Territorial Clause,[5] legislate as to Puerto Rico in a manner different from the rest of the United States. *Harris v. Rosario,* 446 U.S. 651, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980); *Califano v. Torres,* 435 U.S. 1, 98 S.Ct. 906, 55 L.Ed.2d 65 (1978); *Downes v. Bidwell,* 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901); *Pérez de la Cruz v. Crowley Towing & Transp. Co.,* 807 F.2d 1084, 1088 (1st Cir.1986); *Guerrido v. Alcoa Steamship Co.,* 234 F.2d 349, 354–355 (1st Cir.1956). We shall therefore assume that Congress can, if it so desires, exclude Puerto Rico from application of the CWA. Thus, the first issue that must be resolved is whether Congress took such action. We rule that it did not.

In point of fact the CWA has been consistently applied by the courts to land and waters located in Puerto Rico. *See United States v. Berenguer,* 821 F.2d 19 (1st Cir. 1987); *United States v. Commonwealth of Puerto Rico,* 551 F.Supp. 864 (D.P.R.1982) (Torruella, J.), *aff'd,* 721 F.2d 832 (1st Cir. 1983); *Barceló v. Brown,* 478 F.Supp. 646, 663–667 (D.P.R.1979) (Torruella, J.), *aff'd,* 643 F.2d 835 (1st Cir.1981), *aff'd sub. nom. Weinberger v. Romero-Barceló,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *Commonwealth of Puerto Rico v. SS Zoe Colocotroni,* 456 F.Supp. 1327, 1347–1352 (D.P.R.1978) (Torruella, J.), *aff'd,* 602 F.2d 12 (1st Cir.1979); *USI Properties v. E.P.A.,* 517 F.Supp. 1235 (D.P.R.1981); *Commonwealth of Puerto Rico v. Alexander,* 438 F.Supp. 90 (D.D.C.1977); *P.F.Z. Properties v. Train,* 393 F.Supp. 1370 (D.D.C.1975). This is an outcome clearly mandated by the definitional standards previously indicated. *See ante* at 154; 33 U.S.C. § 1362. Furthermore, we can find nothing in the legislative history of the CWA, nor has appellant pointed to anything, indicating a desire in Congress to exclude Puerto Rico

---

**3.** Section 9, as amended, in relevant part provides:

The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States, ...

**4.** As previously indicated, we are here concerned with the Federal Water Pollution Control

Act Amendment of 1972. *See* U.S. Code Cong. & Admin. News 1972, p. 3668; U.S.Code Cong. & Admin.News 1977, p. 4326.

**5.** U.S. Const. art. IV, § 3:

The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; ...

from its application. *See* 1972 U.S. Code Cong. & Admin. News 3741 *et seq.* In fact, because Congress considered the pollution of the waters of the United States to be a problem of national importance, *see ante* at 153, 33 U.S.C. § 1251, there is every reason to conclude that Puerto Rico would not have been excluded. We thus rule that, on its face, the CWA covers Puerto Rico.

██ We thus come to question whether there is some reason, external of the CWA, that makes this statute "locally inapplicable" to Puerto Rico.

In fairness to appellant, of the above cases applying the CWA in Puerto Rico, only in *Colocotroni* and *Alexander* was the relationship of the FRA to the CWA in any way considered, and in *Colocotroni*, this issue was only tangentially touched upon. *Colocotroni, supra,* 456 F.Supp. at 1337. In *Alexander,* however, the district court specifically ruled upon this issue.

In *Alexander* the Commonwealth of Puerto Rico sought a declaratory judgment to the effect that the CWA and its regulations were inapplicable to the non-navigable waters of Puerto Rico because such waters were of purely local concern and thus within the exemption established by the FRA. *See* Section 8 of the FRA, 48 U.S.C. § 749; *ante* at 154. The court ruled against the Commonwealth's assertions, indicating that by the inclusion in the CWA of Puerto Rico within the definition of "State," *Alexander, supra,* 438 F.Supp. at 95 n. 7, and the extension of federal jurisdiction " 'over the nation's waters to the maximum extent permissible under the Commerce Clause of the Constitution'," *id.* at 95 (citing from *Natural Resources Defense Council, Inc. v. Callaway,* 392 F.Supp. 685 (D.D.C.1975)), Congress manifested an intention that the CWA "not fall within the limited exception for locally inapplicable federal statutes" as provided in the FRA. *Id.* at 96. We agree with this conclusion.

Although each statute must be examined independently to determine whether the "locally inapplicable" exemptions of the

FRA apply, *i.e.,* §§ 8, 9, *supra,* we should point out that, as noted by the court in *Alexander,* this exclusion has been narrowly interpreted. Thus most federal legislation considered by the courts has been held applicable to Puerto Rico. *United States v. Quiñones,* 758 F.2d 40 (1st Cir.1985) (Omnibus Control Act); *United States v. Ferrer,* 613 F.2d 1188 (1st Cir.1980) (Rivers and Harbor Act); *Caribtow v. OSHA,* 493 F.2d 1064 (1st Cir.1974) (Occupational Safety and Health Act); *Moreno Ríos v. United States,* 256 F.2d 68 (1st Cir.1958) (Narcotic Drugs Import and Export Act); *Hodgson v. Unión de Empleados de los Supermercados Pueblos,* 371 F.Supp. 56 (D.P.R.1974) (Labor-Management Reporting and Disclosure Act). *Contra, Lastra v. New York & Porto Rico S.S. Co.,* 2 F.2d 812 (1st Cir. 1924) (substantive admiralty law of the United States supplanted by Puerto Rico Workmen's Compensation Act for maritime accident occurring in local waters); *Pérez de la Cruz v. Crowley Towing & Transp. Co.,* 807 F.2d 1084 (1st Cir.1986) (1980 amendments to FRA permit Jones Act to be supplanted by Puerto Rico Workmen's Compensation Act for accident to resident seamen occurring within three marine leagues of Puerto Rican coast line).

Concerning the latter cases, whatever may be said regarding the rule established in *Lastra* and followed in *Pérez de la Cruz,*[6] it must be remembered that the court in *Lastra* stated that the result reached did not mean "that Puerto Rican legislation could ... supplant a rule of ... law which Congress in the exercise of its constitutional power *has expressly made applicable* to [Puerto Rico]." *Lastra, supra,* 234 F.2d at 355 (emphasis supplied). The CWA inclusion, as indicated by the court in *Alexander,* is precisely such an expression. *See* 33 U.S.C. § 1362.

Appellant's contention is further defeated by the fact that irrespective of the express desire of Congress that the CWA apply to Puerto Rico, there is no local Puerto Rican legislation making the CWA "lo-

---

**6.** The writing judge in this appeal is of the opinion that the validity of the *Lastra* doctrine is seriously in question today because this discriminatory treatment of Puerto Rican seamen is lacking "a rational basis." *See Harris v. Rosario, supra.*

cally inapplicable." To be "locally inapplicable," the Puerto Rican legislation must be incompatible with or specifically exclusive of the federal legislation it seeks to supplant. *See Lastra, supra; Pérez de la Cruz, supra.* The Puerto Rican legislation in this field, rather than supplant the CWA, supplements the federal statutes. *See Romero Barceló, supra,* 478 F.Supp. at 663–667. *See also* the Water Pollution Control Act of Puerto Rico, 24 L.P.R.A. §§ 591 *et seq.;* the Public Policy Environmental Act, 12 L.P.R.A. §§ 1121 *et seq.;* the Puerto Rico Swampy or Barren Land Reclamation Act, 28 L.P.R.A. §§ 71–86; 3 L.P.R.A. § 370; 12 L.P.R.A. §§ 1101 *et seq.* The Puerto Rico Swampy or Barren Land Reclamation Act, 28 L.P.R.A. §§ 71–86, relied upon by appellant, deals generally with the *draining* of malarial swamps owned by the Commonwealth; it is not only inapposite because of what is involved in this case, but because there is no conflict between this statute and the application of the CWA in Puerto Rico.

One of appellant's principal arguments, however, is a claim that the 1980 amendments to Sections 7 and 8 of the FRA superseded the CWA and delegated to Puerto Rico "all local control, jurisdiction and authority over its navigable and non-navigable waters." Appellant's Brief, at 7. In 1980, Section 7 was amended by adding the last sentence thereof[7] in which the term "control" is defined to include all title, jurisdiction and authority over the transferred properties. At that time, Section 8 was also amended in a similar fashion,[8] but also included were definitions for the terms "submerged lands underlying navigable bodies of water" and "navigable bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters."

Appellant overstates his case. The major purpose in amending these provisions

"was to give Puerto Rico the same rights to undersea minerals as certain coastal states were given by the Submerged Lands Act, 43 U.S.C. § 1301 (1953)." *Pérez de la Cruz, supra,* 807 F.2d at 1088. *See also* S.Rep. 467, 96th Cong., 1st Sess. 22 (1979). There is nothing in the language of these amendments, or in their legislative history, *see* 1980 U.S. Code Cong. & Admin. News, p. 135, to indicate that the Congress intended to exclude Puerto Rico from its *specific* inclusion within the CWA, anymore than the inclusion of the other coastal states within the Submerged Lands Act could be taken to mean their exclusion from coverage of the CWA. By the 1980 amendments to the FRA Congress intended to equate Puerto Rico with other coastal states in terms of resource ownership, not to grant it special privileges and exemptions to allow degradation of the Nation's waters. When Congress has specifically included Puerto Rico in legislation of such national importance as that embodied in the CWA, it requires a stronger showing of a change in policy than that relied upon by appellant to bring about Puerto Rico's exclusion.[9] *See Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974).

There is no question but that the CWA applies in Puerto Rico notwithstanding the FRA.

*The effect of proceedings before the Commonwealth courts*

■ Appellant's next claim borders on the frivolous. It is his contention that this suit, brought by the United States in the United States District Court for Puerto Rico, should have been dismissed because of the pendency of litigation in the courts of the Commonwealth. A perusal of the record in this case, made more difficult because of the deficient appendix submitted, indicates that the suit in question

---

7. The full text is reproduced *ante* at 3 n. 1.

8. The full text is reproduced *ante* at 4 n. 2.

9. Interestingly enough, in the original draft to the amendments in question, which are part of Pub.L. No. 96–205, the Guam Power Authority was specifically exempted from certain provi-

sions of the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* This is an unequivocal indication that Congress can be explicit in its exemption from legislation of national application, when such results are desired. *See* S.Rep. 96–467, 96th Cong., 1st Sess. at pp. 3, 13–17 (1979); 1980 U.S. Code Cong. & Admin. News, p. 135, 136.

pending before the Superior Court of Puerto Rico, Carolina Part, Civil No. 84–8306, concerns an action for injunctive and declaratory relief filed by various private parties against certain private developers. The Commonwealth court suit claims violations of various Puerto Rican environmental laws and regulations dealing with the issuance of construction permits.

Puerto Rico, like most other jurisdictions of the United States, has a full panoply of local judiciary, both at the trial and appellate level, with jurisdiction similar to that of the judiciary of the various States of the Union. *See* 4 L.P.R.A. § 1. The courts of the Commonwealth are thus competent to enforce the laws not only of that jurisdiction, but in similar fashion to the courts of the States, also the laws and Constitution of the United States. *Díaz v. Sec. Servicios Sociales,* 112 D.P.R. 256, 259 (1982). This is not to say, however, that the United States is required to litigate in the courts of the Commonwealth the enforcement of federal law, any more than that result is mandated vis-a-vis the courts of any other jurisdiction in the United States. Such a requirement is particularly inappropriate when, as here, the two lawsuits involve different considerations. 28 U.S.C. § 1345. *United States v. Com. of Puerto Rico, supra,* 551 F.Supp. at 865–66, 868–69. Since the issues in the two cases are not identical, appellee was entitled to raise the federal claims before the courts of the United States. *Id.* § 1345.

*The alleged "taking" of appellant's property*

Appellant alleges that the designation by the corps of certain parts of his land as "wetlands" constitutes a taking of his property without due process of law.[10] The Government argues that the issue was not raised below. While appellant vaguely referred to a "taking" in the answer to the preliminary injunction petition and in the memorandum of law, his principal line of attack was the absence of jurisdiction. Appellant neither argued nor briefed the "tak-

ings" claim below, and apparently for that reason the district court did not consider it. *See Cohen v. President and Fellows of Harvard College,* 729 F.2d 59 (1st Cir.), *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984). We hold that appellant failed to preserve the issue. *Cf. Wightman v. Bureau of Alcohol, Tobacco and Firearms,* 755 F.2d 979, 983 (1st Cir.1985); *D. Federico Co. v. New Bedford Redevelopment,* 723 F.2d 122, 128 (1st Cir.1983). *Cf. Rodríguez Rodríguez v. Muñoz Munñoz,* 808 F.2d 138 (1st Cir.1986).

Moreover, even if there were some reason counselling against waiver in this case, appellant's contention would be far from secure. The designation of appellant's property as "wetland" is not the end of the road. Appellant could have requested a permit to engage in the actions allegedly taken by him. *See* 33 U.S.C. § 403; 33 C.F.R. 322.1 *et seq.,* 330.1 *et seq.;* 33 U.S.C. § 1344; 33 C.F.R. 323.1 *et seq.*

> A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense ... Moreover, even if the permit is denied, there may be other viable uses available to the owner. Only when a permit is denied and the effect of the denial is to prevent "economically viable" use of the land in question can it be said that a taking has occurred.

*United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 459, 88 L.Ed.2d 419 (1985). *See also Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982); *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984); *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986); *Keystone Bituminous Coal Ass'n v. De Benedictis,* —— U.S. ——, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); *First English Evangelical Luther-*

---

**10.** U.S. Const. amend. V:

No person shall ... be deprived of ... proper-

ty, without due process of law; ...

*an Church of Glendale v. County of Los Angeles, California,* —— U.S. ——, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The failure of appellant to even request such a permit prior to his engaging in the allegedly proscribed filling of wetlands puts him in an even more tenuous position.

In any event, all that we need decide at this stage, is whether appellee, in seeking the preliminary injunction, has exhibited a likelihood of success on the merits, in addition to the other requirements that must be established for the issuance of such relief. *Planned Parenthood League of Mass., supra,* 641 F.2d at 1009. This, as previously indicated, appellee has done. Appellant is of course not foreclosed from litigating the merits of this issue when the case is heard for disposition of the permanent injunction. *Collazo Rivera v. Torres Gaztambide,* 812 F.2d 258, 259 (1st Cir.1987).

The issuance of the preliminary injunction by the district court is *affirmed.*