Narciso Rafael PEREZ De La CRUZ, et al., Plaintiffs, Appellants,

v.

CROWLEY TOWING AND TRANSPORTATION COMPANY, Defendant, Appellee.

No. 86–1419.

United States Court of Appeals, First Circuit.

Argued Nov. 3, 1986.

Decided Dec. 18, 1986.

Philip E. Roberts, Hato Rey, P.R., with whom Harry A. Ezratty, San Juan, P.R., was on brief for plaintiffs, appellants.

F. Henry Habicht, II, Asst. Atty. Gen., Washington, D.C., Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., Jacques B. Gelin and Michael W. Reed, Dept. of Justice, David A. Colson and Eugene M. Pinkelmann, Jr., Oceans Intern. Environmental and Scientific Affairs, Dept. of State, Washington, D.C., on brief, for U.S., amicus curiae.

J. Ramon Rivera-Morales with whom William A. Graffam, David C. Indiano and Jimenez, Graffam & Lausell, San Juan, P.R., were on brief, for defendant, appellee.

Rafael Ortiz-Carrion, Sol. Gen., Norma Cotti-Cruz, Deputy Sol. Gen., and Vannessa Ramirez, Asst. Sol. Gen., Hato Rey, P.R., on brief, for Com. of Puerto Rico, amicus curiae.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

TIMBERS, Senior Circuit Judge:

Narciso Rafael Perez de la Cruz ("appellant") and his wife appeal from a summary judgment entered February 19, 1986 in the District of Puerto Rico, Juan M. Perez-Gimenez, *Chief Judge*, dismissing their complaint. The complaint alleged that appellee

---

* Of the Second Circuit, sitting by designation.

Crowley Towing & Transportation Company ("appellee") was liable under the Jones Act, 46 U.S.C. § 688 (1982), for injuries sustained by appellant when he fell while on board appellee's tug. The court held that, because the tug was in Puerto Rico's local waters at the time of appellant's accident, his sole remedy was under the Puerto Rico Workmen's Accident Compensation Act ("PRWACA"), 11 L.P.R.A. §§ 1–42. On appeal, appellant argues that the court impermissibly resolved the disputed fact issue of the tug's location at the time of the accident. Appellant also argues that the court misinterpreted a 1980 amendment to the federal statute, 48 U.S.C. § 749 (1982), which confers local maritime jurisdiction on the government of Puerto Rico. We hold that the court was correct in finding that there was no genuine issue of material fact as to the tug's location at the time of the accident. We also hold that PRWACA provides the sole remedy for covered seamen who claim to have sustained injuries caused by their insured employers in accidents which occur within three marine leagues of the Puerto Rican coastline. We affirm.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellant is a resident of Puerto Rico and a merchant seaman. Appellee owns and operates out of San Juan harbor a tug named the Pawnee. Appellant has worked for appellee as an ordinary seaman and cook since 1977. It is undisputed that appellee is an insured employer under PRWACA and that appellant is a covered employee.

On September 19, 1983 appellant was serving as the "day man" on the Pawnee as it returned to San Juan harbor from the Dominican Republic. The day man's chief responsibility is to clean the tug. Sometime between 9:00 and 10:00 A.M. appellant slipped and fell on a ladder between the bridge and the deck. Appellant sustained injuries to his back and hand.

On April 17, 1984 appellant commenced the instant action in the district court. He alleged that under the Jones Act and general maritime law appellee was liable for appellant's injuries. He further alleged that appellee's negligent maintenance of the Pawnee had rendered the tug unseaworthy and caused his injuries. Appellee's answer denied these allegations and asserted as an affirmative defense the exclusive remedy provisions of PRWACA. *See* 11 L.P.R.A. §§ 19, 21.

On October 11, 1984 appellee moved for summary judgment. Appellee claimed that, because the tug was within Puerto Rico's local waters at the time of the accident, PRWACA provided appellant's sole remedy. Appellee included with its motion an affidavit of the Pawnee's captain and the tug's log book for the day of the accident with an explanatory affidavit. The captain in his affidavit stated that, based on his navigational readings and radar plottings, the Pawnee was six miles from the Puerto Rican shore at 7:30 A.M. on the day of the accident and continued to move closer to shore throughout the morning, reaching a distance of four miles from shore by 11:00 A.M. The tug's log book also showed that it was six miles from shore at 7:30 A.M. and four miles from shore at 11:00 A.M. The explanatory affidavit, sworn to by another of appellee's captains, stated how the radar plottings were made and vouched for their accuracy. Appellee asserted that Puerto Rico's local waters extended for three marine leagues or 10.38 miles.

Appellant's opposition to summary judgment was two-pronged. First, appellant claimed that the tug was twenty to twenty-five miles off shore at the time of the accident and therefore outside of Puerto Rico's local waters. Appellant supported this contention with his own affidavit in which he stated that, based on his own observations, the Pawnee was twenty to twenty-five miles from shore at the time of the accident. Appellant argued that the tug's location at the time of the accident was a genuinely disputed material fact which precluded summary judgment. Sec-

**1086**

ond, appellant claimed that, even if the tug was between four and six miles from shore at the time of the accident, Puerto Rico's local waters extended to only three miles from shore.

In an opinion dated February 10, 1986 the court granted summary judgment in favor of appellee and dismissed the complaint. The court held that while the tug's location at the time of the accident was a material fact, there was no genuine issue as to that location in light of the parties' submissions. The court found that appellant's vague and unsubstantiated personal observations as to the tug's location failed to overcome appellee's showing based on navigational charts and radar plottings. The court found that the tug was within six miles of Puerto Rico at the time of the accident.

As to the scope of Puerto Rico's local waters, the court held that Congress, in the 1980 amendment to Puerto Rico's Second Organic Act, 48 U.S.C. § 749 (1982) ("§ 749"), extended Puerto Rico's maritime jurisdiction to the navigable waters within three marine leagues of the Puerto Rican coastline. Relying on the long established law of this Circuit, the court held that, since the accident occurred within this area of Puerto Rican maritime jurisdiction and since appellant's accident was covered under PRWACA, appellant's sole remedy was provided by PRWACA. The court dismissed the complaint. This appeal followed. The United States has submitted a brief as amicus curiae in opposition to the court's judgment. The Commonwealth of Puerto Rico has submitted a brief as amicus curiae in support of the court's judgment.

For the reasons stated below, we affirm the judgment dismissing the complaint.

## II.

Appellant raises two arguments aimed at overturning the court's grant of summary judgment. First, he argues that the court erred in deciding the fact question of the tug's location at the time of the accident on a motion for summary judgment. Second, he argues that, even if the tug was only between four and six miles off shore at the time of the accident, the tug was still beyond Puerto Rico's maritime jurisdiction and therefore within the ambit of the Jones Act.

We need spend little time in disposing of appellant's first argument. The standards governing the award of summary judgment are well settled and require little elaboration. While the burden is on the party seeking summary judgment to show that there are no genuine issues of material fact, the party opposing summary judgment "may not rest upon the mere allegations ... of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Supreme Court recently has defined a genuine issue as one in which the party opposing summary judgment provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, — U.S. —, —, 106 S.Ct. 2505, 2510 (1986). In the instant case, appellee more than satisfied its burden of showing that there was no genuine issue of material fact with respect to the tug's location at the time of the accident. Appellee's affidavits and log book entries, based on navigational charts and radar plottings, established that the tug was no more than six miles from the Puerto Rican coastline at the time of the accident. Appellant produced virtually no evidence to refute this showing. His only submission was his own affidavit in which he stated "I know from my past experience that I was approximately the distance from Puerto Rico that I allege in my deposition which was 20–25 miles." We agree with the district court that this bare allegation did not satisfy appellant's burden in resisting summary judgment. Appellee's submissions made it necessary for appellant to bring "significant probative evidence" to the district court's attention which would have tended to show a genuine dispute over the tug's location. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290

(1968). Appellant's vague allegation based on his observations is composed of "the gossamer threads of whimsey, speculation and conjecture" which we have held insufficient to defeat a properly supported motion for summary judgment. *Manganaro v. Delaval Separator Co.*, 309 F.2d 389, 393 (1st Cir.1962). We agree with the district court that, based on the parties' submissions, no reasonable jury could have found that the tug was twenty to twenty-five miles from shore at the time of the accident. We hold that the district court was correct in holding that there was no genuine issue of material fact as to the tug's location and in finding that the tug was between four and six miles from the Puerto Rican coastline at the time of the accident.

Appellant's second argument requires a more extended discussion. The tug's location at the time of the accident is significant because of an unbroken line of cases dating back to 1924 in which this Court has held that Congress, in § 749 and its predecessors, gave Puerto Rico the power to supplant federal maritime law in favor of PRWACA for covered accidents involving seamen that occur in Puerto Rico's local waters. *E.g., Lastra v. New York & Porto Rico S.S. Co.*, 2 F.2d 812 (1st Cir.1924); *Guerrido v. Alcoa Steamship Co.*, 234 F.2d 349 (1st Cir.1956); *Fonseca v. Prann*, 282 F.2d 153 (1st Cir.1960), *cert. denied*, 365 U.S. 860 (1961); *Alcoa Steamship Co. v. Perez Rodriguez*, 376 F.2d 35 (1st Cir.), *cert. denied*, 389 U.S. 905 (1967); *Mojica v. Puerto Rico Lighterage Co.*, 492 F.2d 904 (1st Cir.1974); *Garcia v. Friesecke*, 597 F.2d 284 (1st Cir.), *cert. denied*, 444 U.S. 940 (1979); *Lusson v. Carter*, 704 F.2d 646 (1st Cir.1983). In *Lusson*, we held that, because of the power Congress delegated to Puerto Rico in § 749, PRWACA displaces the Jones Act as the exclusive remedy for covered seamen injured by insured employers in Puerto Rican waters. *Lusson, supra*, 704 F.2d at 649. We also have held that Puerto Rico may not supplant the Jones Act with PRWACA for accidents occurring outside the boundaries imposed by § 749. *Caceres v. San Juan Barge Co.*, 520 F.2d 305 (1st Cir.1975).

Within this framework, the critical question is whether the tug here involved was in waters in which Congress has given Puerto Rico the power to supplant the Jones Act when the accident occurred. This question can be answered only by an examination of § 749, the statute by which Congress delegated its local maritime jurisdiction to Puerto Rico.

Prior to 1980 § 749 provided in relevant part:

"The harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters, owned by the United States on March 2, 1917, and not reserved by the United States for public purposes, are placed under the control of the government of Puerto Rico...."

The statute was silent on the exact extent of the "navigable bodies of water" to which Puerto Rico was given "control". On March 12, 1980, however, Congress amended § 749 by adding, among other things, a definition of "navigable bodies of water". That definition provides:

" 'navigable bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters' extend from the coastline of Puerto Rico and the adjacent islands as heretofore or hereafter modified by accretion, erosion, or reliction, *seaward to a distance of three marine leagues;*"

(emphasis added). On its face the 1980 amendment to § 749, in conjunction with our prior holdings regarding the effect of § 749, appears to permit Puerto Rico to supplant the Jones Act with PRWACA for covered accidents to seamen that occur within three marine leagues or approximately 10.38 miles from the coastline of Puerto Rico.

Appellant argues, however, that Congress only intended the 1980 amendment to § 749 to give Puerto Rico control over the submerged lands extending three marine leagues from its shores and not the waters

above those lands. In part, this argument is based upon the statute's definition of "control," also added in 1980, as

> "includ[ing] all right, title, and interest in and to and jurisdiction and authority over the submerged lands underlying the harbor areas and navigable streams and bodies of water in an around the island of Puerto Rico and the adjacent islands and waters...."

On its face, however, this definition only clarifies that Puerto Rico's "control" includes authority over submerged lands, and does not limit it to those lands. Furthermore, if this definition were read as restricting Puerto Rico's authority to submerged lands, it would do so within (as well as outside) the three-mile zone within which we have long recognized the effect of PRWACA. Nothing in the legislative history suggests that Congress intended to overrule this line of decisions. While we agree that most of the legislative history concerning the amendment suggests that Congress' major purpose in amending § 749 was to give Puerto Rico the same rights to undersea minerals as certain coastal states were given by the Submerged Lands Act, 43 U.S.C. § 1301 (1953), the legislative history expresses no intent to limit the plain language of the amendment which gives Puerto Rico control over the navigable waters within three marine leagues of its coastline. *See* S.Rep. 467, 96th Cong., 1st Sess. 22 (1979). As we have indicated in our earlier cases construing the predecessors of § 749, comparisons with the rights of coastal states are unavailing since the Supreme Court has held that Congress may not constitutionally delegate its maritime jurisdiction to the states. *Knickerbocker Ice Co. v. Stewart*, 253 U.S.

149 (1920); *Southern Pacific Co. v. Jensen*, 244 U.S. 205 (1917). We have held, however, that Congress may do just that in the case of Puerto Rico under the territories clause, U.S. Const. Art. IV, § 3, cl. 2. *Guerrido, supra*, 234 F.2d at 354–55. Congress therefore could not give the coastal states maritime jurisdiction in the Submerged Lands Act, but could and did give Puerto Rico that jurisdiction in § 749.

We hold that the 1980 amendment to § 749 permits Puerto Rico to supplant the Jones Act with PRWACA for covered accidents to seamen which occur within three marine leagues of the Puerto Rican coastline.[1] Any other holding would overrule implicitly our prior decisions construing § 749 and its predecessors. We decline to do so. Since it is undisputed that appellant is a covered employee and appellee is an insured employer under PRWACA, and we have held that the district court was correct in finding that the accident occurred within three marine leagues of the Puerto Rican coastline, we affirm the district court's dismissal of appellant's Jones Act complaint. PRWACA provides appellant the exclusive remedy. 11 L.P.R.A. §§ 19, 21. Congress, in enacting § 749, has chosen to permit Puerto Rico to supplant the Jones Act by enacting inconsistent local legislation. Puerto Rico, in enacting PRWACA, has taken advantage of this delegation of power. We are bound to enforce this statutory scheme.

### III.

To summarize:

We hold that the district court was correct in holding that there was no genuine

---

1. The United States in its amicus brief suggests that an affirmance of the district court's judgment will wreak havoc with this country's international relations. This argument seems to be premised on the notion that our decision will have some effect on the boundaries of Puerto Rico's territorial waters. As must be obvious from our holding, we express no opinion on the extent of Puerto Rico's territorial waters with relation to the rights of other countries. Especially, nothing herein is to be taken as diminishing the rights of the United States in the question of the United States in the ques-

tioned waters with respect to international relations, national defense, or control over the transit of its own or foreign vessels. Our holding concerns only the extent to which Puerto Rico may dictate the exclusive remedy for *its residents* who sustain injury within three marine leagues of its coastline. *Cf. United States v. Louisiana*, 363 U.S. 1, 32–36 (1960) (Submerged Lands Act's extension of certain states' mineral rights to three marine leagues has no effect on international borders).

issue of material fact as to the location of the tug at the time of the accident and in finding that the tug was between four and six miles from the Puerto Rican coastline when the accident occurred. Appellant failed to adduce any probative evidence to overcome appellee's compelling showing of the tug's location.

We also hold that the 1980 amendment to § 749 permits Puerto Rico to supplant the Jones Act with PRWACA for covered accidents to resident seamen that occur within three marine leagues of the Puerto Rican coastline. We consistently have held that Congress in § 749 and its predecessors gave Puerto Rico the power to displace federal maritime law with respect to such accidents to resident seamen by enacting inconsistent local legislation. The 1980 amendment to § 749 simply defined the extent to which this limited grant of jurisdiction could reach, i.e. three marine leagues. Puerto Rico has chosen to make the procedures provided in PRWACA the exclusive remedy for covered employees allegedly injured by their insured employers. It is those procedures, not the federal court, to which appellant must look for redress.

Affirmed.