Raymond R. MOURADIAN, Plaintiff,

v.

The JOHN HANCOCK COMPANIES, et al., Defendants.

Civ. A. No. 86–2318–WF.

United States District Court, D. Massachusetts.

Aug. 30, 1988.

Raymond Mouradian, pro se.

Charles Cohen, Gregory Homer, Vedder Price Kaufman Kammholz & Day, Washington D.C., for defendants.

David Hart, Lowell, Mass., for Sentry, Middlesex & Ballard.

Warren Pyle, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, Mass., for United Food & Commercial Workers Int. Union, William Wynn & Andre Henault.

Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, Mass., for Robert N. Tarlov.

Joseph, Ryan, Lyne, Woodworth & Evarts, Boston, Mass., for Robert Allison, John Hancock Mut. Life Ins. Co., Gerald Hurwitch, John McElwee, James Morton, Bruce Oliver, Bernard Panos, Ronald Pellechia, Neal Smith.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiff Raymond Mouradian has brought this action, *pro se*, alleging, *inter alia*, that he was wrongfully terminated by his former employer, defendant John Hancock Mutual Life Insurance Company ("John Hancock Mutual"), and that his former union, defendant United Food and Commercial Workers International Union (the "Union"), breached its duty of fair representation by refusing to submit his termination grievance to arbitration. In addition to John Hancock Mutual and the Union, plaintiff has named as defendants The John Hancock Companies;[1] various officers and employees of John Hancock Mutual; the President and an employee of the Union; the Sentry Insurance Co. and its Chief Executive Officer; the Middlesex Insurance Company; the President of the Insurance Workers' International Union;[2] and Phyllis Cella, President of Hanseco Insurance Company and John Hancock Property and Casualty Company.

This action originally was filed in Massachusetts state court and was removed to this court pursuant to 28 U.S.C. § 1441 by several defendants on the ground, among others, that the complaint alleges violation of a collective bargaining agreement and thus arises under § 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185. On April 3, 1987, defendant John Hancock Mutual along with its officers and employees (collectively, "the John Hancock defendants")[3] moved for summary judgment on various grounds. That motion was referred to a Magistrate who subsequently issued a memorandum recommending that the motion be allowed. Plaintiff has filed objections to the Magistrate's Findings and Recommendation. Additionally, after the Magistrate issued her

---

1. At his deposition, plaintiff stipulated to the fact that "The John Hancock Companies" is not an independent legal entity. Accordingly, plaintiff's claims against this defendant were withdrawn orally. *See* Mouradian Dep. at 2:60.

2. It appears that the Insurance Workers' International Union was merged into the United Food and Commercial Workers' International Union while plaintiff was employed with John Hancock Mutual. *See* Mouradian Dep. at 25–26.

3. The John Hancock defendants include John Hancock Mutual, John McElwee, E. James Morton, Neal Smith, Bernard Panos, Robert Allison, Robert Tarlov, Ronald Pellechia, Gerald Hurwitch and R. Bruce Oliver.

findings, the Union moved along with its president, William Winn, and its employee, Andre Henault (collectively, "the Union defendants"), for summary judgment on many of the same grounds underlying the John Hancock defendants' motion.

On June 14, 1988 this court held a lengthy hearing on plaintiff's objections to the Magistrate's Findings and Recommendation on the John Hancock defendants' Motion for Summary Judgment, and on the Union defendants' Motion for Summary Judgment. At the hearing, plaintiff was permitted to supplement the record orally. In addition, because plaintiff is *pro se* this court has liberally construed his allegations and the record. Nevertheless, for the reasons stated below, the court concludes that the defendants' motions for summary judgment are meritorious. Thus, the motions for summary judgment are allowed. Plaintiff's claims against the remaining defendants are also without merit and must be dismissed.

## I. FACTS

### A. *The Complaint*

It is difficult to discern from plaintiff's *pro se* complaint the precise nature and parameters of his claims. In ¶ 1 of the complaint plaintiff states that he is seeking $101,700,000 in compensatory and punitive damages for

1) wrongful termination, 2) violation of civil rights, 3) breach of contract, 4) malicious libel, 5) violations of relations (grievance) procedures, 6) unfair labor practices, 7) unfair business practices, 8) fraud, 9) [invasion] of privacy, 10) withholding earned commissions, 11) unlawful termination of an elected union official (union busting), 12) conspiracy, complicity, collusion, [and] 13) Union misrepresentation, as a consequence of the termination of the Plaintiff on November 8, 1984, and emotional distress, pain and suffering by the Plaintiff and the Plaintiff's spouse and children.

Plaintiff also alleges numerous statutory bases for relief and cites various provisions of the collective bargaining agreement between John Hancock Mutual and the Union which he claims were breached.

Plaintiff's factual allegations are as follows. Plaintiff alleges that in 1972 he began working as a John Hancock district sales agent at John Hancock Mutual's Brockton office. Plaintiff further alleges that he was elected District Office Chairman of the Union in 1980, 1981 and 1983, and District Vice Chairman in 1982.

Plaintiff alleges generally that while employed by John Hancock Mutual he was very active in the Union and often invoked the grievance procedure established under the collective bargaining agreement. For example, in 1983 plaintiff filed a grievance for allegedly unfair business and labor practices regarding John Hancock Mutual's Policy Enhancement ("PEP") Program. Plaintiff alleges that to the best of his knowledge that grievance was never answered by John Hancock Mutual or the Union. Plaintiff filed two more grievances in December 1983 regarding certain of John Hancock Mutual's bookkeeping practices. Both grievances were denied. In February 1984, plaintiff filed another grievance over the PEP Program. Plaintiff claims this grievance "was denied with no meaningful reason." Finally, plaintiff alleges that he filed another grievance sometime in 1983 protesting the high percentage of commissions going to management people at the expense of union sales people. This grievance also was denied.

Plaintiff further alleges that at one of the monthly sales meetings he, as District Office Chairman of the Union, argued against a requirement that new agents purchase a $100,000 policy on themselves. Plaintiff also alleges that at two Union meetings in 1984 he vigorously opposed ratification of the new collective bargaining agreement.

With regard to his termination, plaintiff alleges that in April 8, 1984, soon after returning from two weeks of active duty training with the naval reserves, he was called into his district manager's office and informed that the amount of life insurance he had sold over the previous thirteen weeks was unacceptable. Plaintiff protest-

ed that the PEP Program provided unfair competition and that other agents who were selling more insurance were using unethical tactics. Nevertheless, plaintiff was told his performance would have to improve.

On November 8, 1984, plaintiff was given a typewritten letter of termination, effective December 1, 1984, by the acting District Manager. The letter stated that plaintiff's termination was due to "totally unsatisfactory sales performance." Despite the letter, plaintiff alleges that he believes the real reason for his termination was "his numerous union activities, important filed grievances and his effective opposition to John Hancock [Mutual's] and [the Union's] unfair and unlawful business and labor practices."

### B. *Plaintiff's Deposition*

The nature and parameters of plaintiff's claims were clarified during his deposition. That testimony disclosed the following facts. From 1972 until December 1984, plaintiff was employed by defendant John Hancock Mutual as a district sales agent in Brockton. Deposition of Raymond R. Mouradian, November 20, 1986 ("Mouradian Dep.") at 14, 22. Soon after the commencement of his employment plaintiff became a dues paying member of the Insurance Workers' International Union, which subsequently merged into the United Food and Commercial Workers International Union. *Id.* at 25–26. Every three years, John Hancock Mutual and the Union would negotiate a collective bargaining agreement specifying the terms and conditions of employment of John Hancock's district agents, including those of plaintiff. *Id.* at 25–27.

Plaintiff later was elected Union Office Chairman. *Id.* at 30–31. As Office Chairman, plaintiff among other things, participated in the resolution of disputes between the Union and the company involving the collective bargaining agreement. *Id.* at 30. Such participation included assistance in the preparation of grievances filed by disgruntled employees. *Id.* at 30–32. Plaintiff also personally filed three grievances during his employment with John Hancock Mutual. *Id.* at 32. Thus, plaintiff was familiar with the established grievance procedures. *Id.*

At the time of plaintiff's termination, Article IX of the collective bargaining agreement provided that "[t]he Company shall not ... discharge any District Agent except for just and sufficient cause and with due regard for the Agent's reasonable rights." The collective bargaining agreement also provided a four step grievance procedure. Collective Bargaining Agreement Art. V. *See* Mouradian Dep. at 32–33. If the dispute were not resolved at step four, the Union could submit the grievance to arbitration. *Id. See* Mouradian Dep. at 33–34.

By letters dated April 9 and July 25, 1984, plaintiff was warned about unsatisfactory sales performance. Mouradian Dep. exhs. 3, 5. By letter dated November 8, 1984, plaintiff was given a letter terminating his employment effective December 1, 1984. *Id.* exh. 7. Plaintiff immediately filed a grievance concerning his termination. *Id.* at 102, 129–30. The grievance was processed through the four steps provided in the collective bargaining agreement. *Id.* at 136–59, 168–73, 175–76; exhs. 2, 15, 16. By letter dated January 6, 1986, the Union informed plaintiff that it did not intend to take his grievance to arbitration. *Id.* exh. 27. The letter stated that, in the Union's view, plaintiff's grievance could not be distinguished from previous situations in which the Union had been unsuccessful in arbitration. Plaintiff received the Union's letter no later than January 9, 1986. *Id.* at 195–98. Plaintiff filed his complaint in this action on July 14, 1986. *Id.* at 200–01.

In May, 1985 plaintiff filed unfair labor practice charges against John Hancock Mutual and the Union with the National Labor Relations Board ("NLRB"). The charges involved plaintiff's termination. The NLRB ultimately dismissed the charges on statute of limitations grounds and the appeal of that dismissal was denied. The charge against the Union was withdrawn.

Mouradian Dep. at 176–89; 2:31–39; 2:103–04; exhs. 17–22, 24.

Plaintiff never filed a workers' compensation claim against John Hancock Mutual. *Id.* at 204. Plaintiff never filed a complaint or charge with the Federal Trade Commission or any agency of the Commonwealth of Massachusetts. *Id.* at 2:31–32, 99, 116–17. During his employment plaintiff did file grievances concerning the PEP Program, and the matters encompassed by those grievances now form the basis of the unfair business practice claims alleged in the complaint. *Id.* at 2:97–99. Plaintiff conceded at his deposition that his claims against the individual John Hancock defendants relate solely to actions taken or not taken by those individuals in the course of their employment and do not arise out of any personal situation involving plaintiff. *Id.* at 2:62–65, 69, 88, 91–95.

Based on his complaint and deposition testimony, plaintiff appears to be bringing the following claims:

1. A § 301 "hybrid" claim that the John Hancock defendants breached the collective bargaining agreement by discharging him without "just and sufficient cause," and that the Union breached its duty of fair representation by refusing to submit plaintiff's termination grievance to arbitration, *id.* at 2:6, 25;

2. A claim that the John Hancock defendants breached certain other provisions of the collective bargaining agreement by wrongfully withholding commissions and by improperly processing plaintiff's grievances, *id.* at 2:9–10, 17–25;

3. Malicious libel against the John Hancock Mutual district manager who terminated plaintiff, arising out of the statement in his November 8, 1984 termination letter that plaintiff's sales performance was "totally unsatisfactory," *id.* at 2:10–17;

4. Fraud based on plaintiff's claims that neither John Hancock Mutual nor the Union informed him of his rights under the collective bargaining agreement when they gave him his termination letter, *id.* at 2:34–35, and on his receipt of an erroneous 1099 tax form from a John Hancock subsidiary in 1986, *id.* at 2:44–45;

5. "Conspiracy, complicity and collusion" between John Hancock Mutual and the Union based on Union defendant Andre Henault's recommendation to plaintiff that because the Union was unlikely to take his termination dispute to arbitration, he should accept a settlement offer made by John Hancock Mutual, *id.* at 2:49–52;

6. Unfair business practices relating to the PEP Program and to plaintiff's claims that management's share of the commissions was too high, *id.* at 2:99 (these claims formed the basis of earlier grievances filed by plaintiff);

7. Violation of plaintiff's civil rights predicated upon plaintiff's being deprived of his job and his belief that his job was a protected property right under the Federal and State Constitutions, *id.* at 2:6–7, 106;

8. Unfair labor practices resulting from plaintiff's termination in retaliation for his activities on behalf of the Union, *id.* at 2:30–31, 103–04; and

9. Invasion of privacy arising out of the fact that certain John Hancock subsidiaries continued to mail material to plaintiff at his home following his termination, *id.* at 2:38–40.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). "[T]he court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 928 (1st Cir.1983).

Functionally the theory underlying a motion for summary judgment is essentially the same as the theory underlying a motion for directed verdict. The crux of both theories is that there is no genuine

issue of material fact to be determined by the trier of fact, and that on the law applicable to the established facts, the movant is entitled to judgment. *Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 198 (1st Cir.1983) (quoting 6 *Moore's Federal Practice* ¶ 56.02[10], at 56–43).

"[T]o defeat a summary judgment motion, the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would bear the burden of proof at trial." *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1171 (1st Cir. 1988). "A genuine issue is 'one in which the party opposing summary judgment provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." ' " *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir.1988) (quoting *Perez De La Cruz v. Crowley Towing & Transportation Co.*, 807 F.2d 1084, 1086 (1st Cir.1986), (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986))). "Thus, summary judgment is proper when, after adequate time for discovery, the party against whom judgment is sought fails to show sufficient basis for the establishment of an essential element of its case." *Kauffman*, 841 F.2d at 1172.

### B. *Magistrate's Findings and Recommendation*

The Magistrate recommended that the John Hancock defendants' motion for summary judgment be allowed for the following reasons:

1. Plaintiff's § 301 "hybrid" action is barred by the six month statute of limitations applicable to such claims. *See DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Scaglione v. CWA*, 759 F.2d 201 (1st Cir.1985). Because plaintiff received notice of the Union's refusal to submit his termination grievance to arbitration no later than January 9, 1986, he was required to file this action by July 9, 1936. This action was filed on July 14, 1986. The Magistrate rejected plaintiff's contention that Massachusetts' six-year contract limitation period should apply. The Magistrate also rejected plaintiff's contention that he was prevented from filing his action within the limitation period because he spent two weeks on active duty, and one week-end per month, with the Naval Reserves between January and July, 1986.

2. Plaintiff's claims for violation of the grievance procedures in processing his termination grievance and for improper withholding of commissions also concern his termination and the Union's alleged breach of the duty of fair representation, and, accordingly, are subject to and barred by the same six-month limitations period.

3. Plaintiff's claims against the individual defendants for breach of the collective bargaining agreement are barred as a matter of law because they are preempted by § 301 and because individuals who are not parties to the agreement may not be made defendants in a § 301 suit. *See Baker v. Fleet Maintenance, Inc.*, 409 F.2d 551, 554 (7th Cir.1969); *Spielman v. Anchor Motor Freight*, 551 F.Supp. 817 (S.D.N.Y.1982).

4. Plaintiff's state law tort claims for malicious libel, fraud, conspiracy, complicity, collusion and emotional distress are preempted by § 301 because they are based on, and are inextricable from, the rights and obligations flowing from the collective bargaining agreement. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Accordingly, these claims are barred by the statute of limitations.

5. Plaintiff's claims of unfair business practices under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a)(1), and Mass.Gen.L. ch. 93A fail because there is no private right of action under the FTCA, *Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.*, 499 F.2d 232, 237 (2d Cir. 1984), and because Mass.Gen.Laws ch. 93A does not apply to employee-employer disputes like this one. *See Manning v. Zuckerman*, 388 Mass. 8, 12, 444 N.E.2d 1262 (1983).

6. Plaintiff's 42 U.S.C. § 1983 claim fails because plaintiff has not alleged state action. Plaintiff's § 1985 claim fails because plaintiff cannot show any class-based animus. *See Harrison v. Brooks*, 519 F.2d

1358, 1360 (1st Cir.1975). Plaintiff's civil rights claim under the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12 § 11I is without merit because loss of a job does not constitute a deprivation of a state constitutional right. *See Madsen v. Erwin,* 395 Mass. 715, 481 N.E.2d 1160 (1985).

7. Plaintiff's claims under 29 U.S.C. §§ 141 and 160 for unfair labor practices fail because such claims are exclusively within the jurisdiction of the National Labor Relations Board. *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

8. Plaintiff's invasion of privacy claim, arising out of the fact that certain John Hancock subsidiaries continued to mail material to him after he was terminated, fails because in order to state a cause of action under Mass.Gen.L. ch. 214 § 1B an employee must allege that his employer disclosed private facts about the employee to another individual. *See Bratt v. I.B.M.,* 392 Mass. 508, 467 N.E.2d 126 (1984).

### C. *Standard for Reviewing the Magistrate's Findings and Recommendation*

A district court's review of a magistrate's findings and recommendations on a dispositive motion such as a summary judgment motion is governed by 28 U.S.C. § 636(b)(1). That section provides that:

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection has been made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. § 636(b)(1). *See also* Rule 3 of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts ("Magistrate Rule 3"). In conducting a *de novo* review, however, "[t]he judge . . . need not conduct a new hearing and may consider the record developed before the magistrate, making his own determination on the basis of that record." Magistrate Rule 3(b). Further, while those portions of the proposed findings and recommendations which are objected to must be reviewed *de novo,* no review is necessary of those portions not specifically objected to, and failure to object precludes further appellate review. *See U.S. v. Valencia–Copete,* 792 F.2d 4, 6–7 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–05 and n. 1 (1st Cir.1980).

### D. *John Hancock Mutual's Motion for Summary Judgment Must Be Allowed*

In his written objections to the Magistrate's Findings and Recommendation, plaintiff appears to object only to the Magistrate's finding that plaintiff's § 301 "hybrid" claim is time-barred. First, plaintiff points out that he filed a complaint with the National Labor Relations Board on May 30, 1985, and appears to argue that his present lawsuit should be deemed to have commenced on that date rather than on July 14, 1986. Next, plaintiff contends that he was prevented from filing his complaint within six months by his participation in Naval Reserve training. This service consisted of two weeks on active duty from March 1 to March 15, 1986 and one weekend per month during the remainder of the relevant period.

■ This court has conducted a *de novo* review of those portions of the Magistrate's Findings and Recommendations to which plaintiff has objected and finds that the Magistrate's conclusions are correct. With regard to plaintiff's contention that, for statute of limitation purposes, his present lawsuit should be deemed to have commenced on May 30, 1985, the filing of an unfair labor practice charge with the NLRB simply does not commence a federal lawsuit. Rather, a civil suit is commenced by the filing of a complaint with the court. *See* Fed.R.Civ.P. 3. Indeed, as of May 30,

1985 plaintiff had no claim for failure to submit his termination grievance to arbitration since the Union had not yet refused to do so.

■ The court also concludes that plaintiff's participation in Naval Reserve training did not toll the six month statute of limitations. Plaintiff's argument is based on § 10(b) of the LMRA, 29 U.S.C. § 160(b), which establishes the six month limitation provision held by the Supreme Court in *DelCostello* to govern hybrid actions brought under § 301 of the LMRA, 29 U.S.C. § 185. Section 10(b) provides, in pertinent part, that:

> no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, *unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the date of his discharge.*

29 U.S.C. § 160(b) (emphasis added). Relying on this section, plaintiff in effect argues that he was prevented by his Naval Reserve training from filing his complaint within the six month period.

The Magistrate found that plaintiff's reliance on the armed forces tolling provision is misplaced for two reasons. First, relying on *West v. Conrail*, 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987), the Magistrate determined that the tolling provision had not been made applicable to § 301 hybrid actions along with the six month limitation provision. Second, the Magistrate decided that even if the armed forces tolling provision were applicable, plaintiff's two weeks of service in the Naval Reserves did not "prevent" him from filing his complaint within six months.

This court disagrees with the Magistrate's conclusion that the "armed forces" tolling provision is inapplicable to § 301 hybrid claims. It is true that in *West* the Supreme Court stated that it did not intend in *DelCostello* for the *service* requirements

in § 10(b) to be carried over to § 301 hybrid actions with the six month limitations provision. Rather, the Court stated in *West* that:

> The only gap in federal law that we intended to fill in *DelCostello* was the appropriate limitations period. We did not intend to replace any part of the Federal Rules of Civil Procedure with any part of § 10(b) of the National Labor Relations Act. Rule 3 of the Federal Rules ... provides that a civil action is commenced by filing a complaint with the court, and Rule 4 governs the procedure for effecting service and the period within which service must be made.
>
> \*   \*   \*   \*   \*   \*
>
> Inevitably our resolution of cases or controversies requires us to close interstices in federal law from time to time, but when it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than is necessary.

481 U.S. at 38–39, 107 S.Ct. at 1541–42.

Nevertheless, the Court also recognized in a footnote that:

> In some cases, the determination of the length of the borrowed period may require examination of the tolling rules that are followed in the jurisdiction from which the statute of limitations is borrowed. *See, e.g., Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct.1938, 1943, 85 L.Ed.2d 254 (1985) (suggesting that length of limitations period and "closely related questions of tolling and application" are governed by state law in action brought under 42 U.S.C. § 1983); *Chardon v. Fumero Soto*, 462 U.S. 650, 661–662, 103 S.Ct. 2611, 2618–2619, 77 L.Ed.2d 74 (1983) (§ 1988 requires borrowing Puerto Rico's statute of limitations and its rule that after tolling ends, statute of limitations begins to run anew in § 1983 action); *Board of Regents, Univ. of N.Y. v. Tamanio*, 446 U.S. 478, 484–485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980) (§ 1988 requires federal courts in § 1983 actions to refer to state statute of limitations and coordinate tolling rules unless state law is inconsistent with fed-

eral law). The governing principle is that we borrow only what is necessary to fill the gap left by Congress.

*West,* 481 U.S. at 39 n. 6, 107 S.Ct. at 1542 n. 6. In view of the foregoing footnote this court concludes that § 10(b)'s armed services tolling provision is applicable to § 301 hybrid actions.

However, the court agrees with the Magistrate that plaintiff was not "prevented" by his service in the Naval Reserves from filing his complaint within six months of being notified that the Union was not going to submit his termination dispute to arbitration. Plaintiff stated in his filings and at the hearing that he spent two weeks on active duty training in Mississippi in March, 1986, and that he served an additional two days of every month between January and July, 1986 with the Reserves. The John Hancock defendants do not dispute these facts. Thus, it appears that plaintiff had several days less to work on his case than he would have had if he had not served with the Reserves. However, his two weeks of active duty ended long before the six month limitation period expired. Thus, plaintiff could have filed his action within six months despite his service in the Reserves.

At the hearing plaintiff also stated, and defendants do not dispute, that immediately after being notified that the Union was not going to take his termination grievance to arbitration, he asked his attorney to prepare a complaint and to initiate a lawsuit on his behalf. Plaintiff states that his attorney agreed to do so. Yet, when plaintiff contacted his attorney again in February, 1986, he had not yet begun work on the complaint. Plaintiff told his attorney that he soon would be participating in active duty training for two weeks, and expected to receive a draft of the complaint when he returned. When he returned, however, the attorney still had done no work on plaintiff's case. Plaintiff gave his attorney until April 15, 1986 to file the complaint. However, that date passed without a complaint being filed. Plaintiff discharged his attorney on May 13, 1986. When his subsequent efforts to obtain new counsel failed, he drafted and filed the complaint himself.

Plaintiff argued at the hearing that the foregoing chronology of events supports his contention that the limitation period should be extended to make up for the approximately twenty-seven days he spent in the Naval Reserves. This contention, however, is not correct. These facts, if true, merely indicate that plaintiff's failure to meet the six month deadline resulted from his attorney's conduct rather than from plaintiff's service in the Reserves.

Although he did not raise these issues in his written objections to the Magistrate's report, at the hearing plaintiff orally objected to the Magistrate's recommendations that plaintiff's federal and state civil rights claims be dismissed. Since plaintiff is appearing *pro se* this court has considered this question *de novo* as well. The court concludes that the Magistrate's findings and recommendations regarding these claims were correct.

With regard to plaintiff's claim under 42 U.S.C. § 1983, the Magistrate found, and this court agrees, that plaintiff is unable to satisfy that statute's "state action" requirement. *See, e.g., Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Rodriguez v. Conagra, Inc.,* 527 F.2d 540, 541 (1st Cir.1976). This court also agrees with and adopts the Magistrate's determination that plaintiff's claim under 42 U.S.C. § 1985 is defective because plaintiff does not allege he was the victim of invidious class-based discriminatory animus. *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Harrison v. Brooks,* 519 F.2d 1358, 1360 (1st Cir.1975). Indeed, at his deposition plaintiff specifically denied that he is alleging class-based discrimination.

■ Finally, plaintiff's claim under the Massachusetts Civil Rights Act, Mass. Gen.L. ch. 12 § 11I, fails because plaintiff has not adequately alleged deprivation of a State or Federal constitutional or statutory right. Mere deprivation of one's job, without more, is not a wrong for which § 11I provides a remedy. *See Madsen v. Erwin,*

395 Mass. 715, 725–26, 481 N.E.2d 1160 (1985). As plaintiff has not identified any protected right of which he was deprived, his claim under Mass.Gen.L. ch. 12 § 11I must be dismissed.[1]

### E. The Union Defendants' Motion for Summary Judgment Must Be Allowed

The Union defendants have moved for summary judgment for many of the same reasons that the Magistrate recommended allowance of the John Hancock defendants' motion. Plaintiff did not formally respond to the Union defendants' motion. It was, however, addressed at the hearing. The court concludes the Union defendants' motion must also be allowed.

■ Plaintiff's claim against the Union defendants is in essence a claim that the Union breached its duty of fair representation in handling plaintiff's termination grievance. Such a claim is barred by the applicable six-month statute of limitations. *DelCostello,* 462 U.S. at 158–72, 103 S.Ct. at 2287–95. Further, individual officers or members of a labor union may not be held liable for the union's breach of its duty of fair representation. 29 U.S.C. § 185(b); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 247–49, 82 S.Ct. 1318, 1325–26, 8 L.Ed.2d 462 (1962); *Bey v. Williams,* 590 F.Supp. 1150, 1154–55 (W.D.Pa.1984).

The only possible claim against the Union defendants suggested by plaintiff which is not a § 301 hybrid claim is that the Union violated 29 U.S.C. §§ 411 and 412. Section 411 sets forth a "bill of rights" for union members within their labor union, and § 412 provides a private right of action in favor of anyone whose internal union rights have been violated.

Plaintiff has not, however, specifically described any Union conduct alleged to violate § 411, but rather has included §§ 411 and 412 in a lengthy laundry list of statutes pursuant to which he claims relief. Thus, it appears that these statutory provisions were inserted merely as an attempt to provide an alternative basis for plaintiff's wrongful termination claim.

■ Even when the complaint is liberally construed, it does not allege facts sufficient to state a claim under § 411. In addition, the Court of Appeals for the First Circuit has suggested, although not decided, that where a claim for a violation of § 411 has been appended to what is basically a classic "hybrid" suit involving an alleged breach of the union's duty of fair representation, the claim is governed by the six month limitation period applicable to hybrid actions generally. *See Doty v. Sewall,* 784 F.2d 1, 4–5 (1st Cir.1986). *See also Adkins v. International Union of Electrical Workers,* 769 F.2d 330 (6th Cir. 1985); *Vallone v. Teamsters Local 705,* 755 F.2d 520 (7th Cir.1984). Thus, it appears that plaintiff's § 411 claim was untimely filed because it arises out of the same facts underlying his hybrid suit.

### F. The Claims Against the Remaining Defendants Must Be Dismissed

Shortly after plaintiff filed his complaint in state court, defendants Sentry Insurance Co., Middlesex Ins. Co. and Frank Ballard filed motions to dismiss for, among other things, failure to state a claim upon which relief could be granted. At the hearing on June 14, 1988, these defendants renewed these motions. The court concludes that these motions should be allowed. Plaintiff

---

**4.** Contemporaneously with the filing of his objections to the Magistrate's report, plaintiff also moved for an order compelling arbitration of his termination dispute. The John Hancock defendants have not responded to this request. However, the court concludes it should be denied. The collective bargaining agreement in this case is between the Union and John Hancock Mutual. Thus, it is up to the Union to enforce the agreement by, among other things, submitting employee grievances to arbitration if it deems such action appropriate. The collective bargaining agreement does not give individual employees the right to compel arbitration themselves. *See Vaca v. Sipes,* 386 U.S. 171, 184 n. 10, 87 S.Ct. 903, 913 n. 10, 17 L.Ed.2d 842 (1967). Rather, an individual employee's remedy is a suit for breach of the duty of fair representation for failure to submit his grievance to arbitration. *Id.* at 190–93, 87 S.Ct. at 916–18. As already noted, such a suit in this case is barred by the applicable statute of limitations.

has not alleged any independent claims against these defendants. Rather, to the extent plaintiff has alleged any claims against these defendants, they are based solely upon plaintiff's § 301 hybrid claims against John Hancock Mutual and the Union because they arise out of an alleged corporate relationship between Sentry, Middlesex and John Hancock Mutual. Accordingly, the claims against Sentry Insurance Co., Middlesex Insurance Co. and Frank Ballard must be dismissed because, like the claims against John Hancock Mutual, such claims are time-barred.

The only remaining defendants in this case are William Gillen and Phyllis Cella. However, it does not appear that either of these defendants has been served. Moreover, the complaint does not allege facts sufficient to state a claim against Cella or Gillen. Accordingly, plaintiff's case against these defendants must be dismissed as well.

III. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The John Hancock Defendants' Motion for Summary Judgment is ALLOWED;

2. The Union Defendants' Motion for Summary Judgment is ALLOWED;

3. Defendants Sentry Insurance Co.'s, Middlesex Insurance Co.'s and Frank Ballard's Motions to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted each are ALLOWED;

4. Plaintiff's claims against defendants William Gillen and Phyllis Cella are DISMISSED pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.