Raymond R. MOURADIAN, Plaintiff,

v.

The JOHN HANCOCK COMPANIES, et al., Defendants.

C. A. No. 86–2318–Wf.

United States District Court, D. Massachusetts.

July 30, 1990.

Raymond Mouradian, Bridgewater, Mass., pro se.

Charles Cohen, Ogletree, Deakins, Nash, & Smoak, Washington, D.C., for defendants.

David Hart, Lowell, Mass., for Sentry, Middlesex & Ballard.

Warren Pyle, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, Mass., for United Food & Commercial Workers Intern. Union, William Wynn and Andre Henault.

Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, Mass., for Robert N. Tarlov.

Joseph, Ryan, Lyne, Woodworth & Evarts, Boston, Mass., for Robert Allison, John Hancock Mut. Life Ins. Co., Gerald Hurwitch, John McElwee, James Morton, Bruce Oliver, Bernard Panos, Ronald Pellechia and Neal Smith.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiff Raymond R. Mouradian brought this action on July 14, 1986 alleging breach of employment contract and breach of the duty of fair representation by the John Hancock Companies ("Hancock") and the United Food and Commercial Workers Union (the "Union") respectively. The suit arose out of plaintiff's termination by Hancock on December 1, 1984.

In a Memorandum and Order dated August 30, 1988, this court granted summary judgment for the defendants on all claims. Specifically, the court found that plaintiff's "hybrid claim" under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, was time-barred under the six month statute of limitations of § 10(b) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 160(b), and that his remaining causes of action were either timebarred or failed to state claims upon which relief could be granted. *Mouradian*

*v. John Hancock Cos.*, 751 F.Supp. 262 (D.Mass.1988). On May 26, 1989, the Court of Appeals for the First Circuit affirmed this court's rulings on all counts, but remanded the case for consideration of an argument raised for the first time, but not briefed, on appeal. *Mouradian v. John Hancock Cos.*, No. 88–2072, 1989 WL 225052 (1st Cir. May 26, 1989). Thus, this court must now decide whether the six month statute of limitations for plaintiff's § 301 claim was tolled by § 205 of the Soldiers' and Sailors' Civil Relief Act of 1940. For the reasons stated below, the court concludes that the statute of limitations was not tolled because the operation of § 205 has for the purposes of this case been superseded and limited by the more specific tolling provisions of § 10(b) of the NLRA.

## I. FACTS

The facts in this case are explained in detail in this court's previous opinion. *Mouradian v. John Hancock Cos.*, 751 F.Supp. 262 (D.Mass.1988) (hereinafter "Mem."). They include the following. Plaintiff was terminated from his job at John Hancock Mutual Life Insurance effective December 1, 1984 on grounds of "totally unsatisfactory sales performance." *Id.* at 265. Plaintiff was notified no later than January 9, 1986 that the Union refused to submit his termination grievance to arbitration. *Id.* at 267. On July 14, 1986, plaintiff sued Hancock and the Union under § 301 of the LMRA, 29 U.S.C. § 185, and asserted a variety of other federal and state law causes of action.

Applying § 10(b)'s six month statute of limitations to plaintiff's § 301 claims, this court held that they were time-barred because they were filed five days after July 9, 1986. Mem. at 269 (citing *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (§ 10(b) applies to § 301 "hybrid" claims)). The court further held that the "armed forces" tolling provision in § 10(b) applied to plaintiff's service in the Naval Reserves, but that plaintiff was not "prevented" from filing his complaint with-

in six months by reason of this service. *Id.* at 269–70. The service in question comprised two weeks active duty training in Mississippi during March, 1986 and two days service with the Reserves every month between January and July, 1986. *Id.* at 270. In addition, the court dismissed plaintiff's other causes of action as deficient as matters of law or as preempted by § 301. *Id.* at 267.

Plaintiff appealed this court's rulings to the Court of Appeals for the First Circuit on numerous grounds. The Court of Appeals, in a per curiam opinion, affirmed this court's decision on all of the issues which had been presented to it. *Mouradian, supra,* slip op. at 2. The court specifically affirmed this court's finding that plaintiff's reserve service did not prevent the filing of his lawsuit under the standards of § 10(b) and was, therefore, time-barred. *Id.* at 2–3. The Court of Appeals remanded the case to this court, however, to determine whether § 10(b)'s six month statute of limitations was tolled by plaintiff's military service pursuant to § 205 of the Soldiers' and Sailors' Civil Relief Act (the "Civil Relief Act"), 50 U.S.C. App. § 525. This issue was raised for the first time on appeal, but not briefed. While the Court of Appeals perceived a sufficiently serious question to be suggested by § 205 that it remanded this issue, the court expressly stated that: "As we have not had the benefit of briefing from the defendants concerning the applicability of § 205, we should not be understood as having made a definitive ruling that the statute [§ 205] applies." *Id.* at 3–6. That issue has now been fully briefed by all parties and considered by this court.

## II.  DISCUSSION

For present purposes, this court assumes, as the Court of Appeals did, that § 205 is generally applicable to reservists like plaintiff.[1] Thus, if the circumstances of a dispute do not involve a collective bargaining agreement, and therefore implicate § 10(b) of the NLRA, pursuant to § 205 a reservist's days on active duty would for that period extend any limitations period.

As set forth below, however, the court finds that in enacting § 10(b), Congress and the President made a specific, special provision for tolling when collective bargaining agreements are implicated, thus rendering § 205 inapplicable in this case. Therefore, as this court has previously decided, and as the Court of Appeals has affirmed, the claims now at issue are time-barred under § 10(b).

Section 10(b) of the NLRA provides, in relevant part:

[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, *unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces,* in which event the six-month period shall be computed from the date of his discharge.

---

1. Section 101 of the Civil Relief Act defines "military service" as "Federal service on active duty with any branch of service heretofore referred to or mentioned as well as training or education under the supervision of the United States preliminary to introduction into the military service." 50 U.S.C. App. § 511(1).

The court notes that § 101 defines "person in military service" to include *"[a]ll* members of the Army of the United States, the United States Navy, the Marine Corps, the Coast Guard" as well as officers of the Public Health Service detailed for military duty. The court construes this definition to include reservists in these service branches and rejects defendants' contrary contention. *See Stephan v. United States,* 490 F.Supp. 323 (W.D.Mich.1980) (applying § 205 to reservist); *Bowles v. Dixie Cab Association,* 113 F.Supp. 324 (D.D.C.1953) (same). The court believes that given the policies underlying the Civil Relief Act, it would be unreasonable not to extend its protections to reservists, who are in some ways more likely than individuals in the regular armed forces to be suddenly and unexpectedly called away from civilian life for indefinite periods of time.

There are, however, no reported cases addressing the issue presented by this case, that is whether § 205 of the Civil Relief Act or § 10(b) of the NLRA is applicable when a collective bargaining agreement is implicated in a dispute involving a serviceman, whether a reservist or otherwise on active duty.

29 U.S.C. § 160(b) (emphasis added). Therefore, § 10(b) expressly conditions its serviceman's tolling provision on a showing of actual prejudice by the aggrieved plaintiff. As previously determined, there was no such prejudice in this case.

Section 205 of the Civil Relief Act, however, does not require any such showing of prejudice. Rather, the statute provides:

*The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service . . ., whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service. . . .*

50 U.S.C. App. § 525 (emphasis added). The plain language of § 205 makes its operation mandatory, subtracting all days of active military duty from the calculation of any limitations period in actions brought by or against servicemen.

The issue now presented for decision by this court is whether § 205 of the Civil Relief Act is superseded and limited for the purposes of this case by the more specific tolling provision of § 10(b) of the NLRA. The court finds that § 10(b) is intended to govern where, as here, a collective bargaining agreement is implicated.

For over 70 years the present § 205 and its predecessors have protected American servicemen from the running of statutes of limitations and periods of adverse possession while they were engaged in the business of defending their country. Section 205 was originally enacted as § 205 of P.L. 103, 40 Stat. 440 (1918). This law was essentially reenacted as the Civil Relief Act of 1940, 50 U.S.C. App. § 501, *et, seq.*, which was extended indefinitely by the Universal Military Training and Service Act of 1948, 50 U.S.C. App. § 464.

The language and history of the Civil Relief Act indicate that it "must be read with an eye friendly to those who dropped their affairs to answer their country's call." *LeMaistre v. Leffers*, 333 U.S. 1, 6, 68 S.Ct. 371, 373, 92 L.Ed. 429 (1948). As stated in 1940:

In order to provide, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defense, provision is hereby made to suspend enforcement of civil liabilities, *in certain cases*, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation. . . .

50 U.S.C. App. § 501 (emphasis added). Each of the provisions of the Civil Relief Act are directed at allowing the serviceman to concentrate fully and freely on his military duty, without the distraction of having to enforce his legal rights within a set limitations period or defend himself in administrative or judicial proceedings during the time of his active duty.

The NLRA, on the other hand, was originally passed in 1935, and addressed the strong federal interest in just and efficient treatment of labor disputes. To this end, § 10(b) of the NLRA "established a limitations period attuned to what [Congress] viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 73, 101 S.Ct. 1559, 1569, 67 L.Ed.2d 732 (1981). As part of this, § 10(b) also directly addressed, in the limited context of labor disputes, the same concern underlying the policy expressed earlier and more generally by § 205—the possible prejudice to servicemen resulting from their active military duty.

Section 10(b) resolved the competing, compelling interests of a strong national defense and the desire for repose in labor relations by allowing a serviceman's active duty to toll otherwise applicable limitations

periods, but only if his service prevented him from filing suit within the set limitations period. It was just such prejudice that this court and the Court of Appeals found lacking in the present case.

A statute may, of course, be modified by subsequent legislation. Although Congress and the President did not expressly amend § 205 of the Civil Relief Act when § 10(b) of the NLRA was passed, their intent to do so is evident. Both § 205 and § 10(b) speak directly to the same concerns regarding a serviceman's rights regarding litigation and they both reflect a special solicitude for military personnel. Like § 205, § 10(b) recognizes that a special rule is appropriate to protect individuals whose military service may affect the conduct of their civilian legal affairs. However, the NLRA, which was passed after the initial enactment of § 205, also took into account the important national interest in the maintenance of peaceful and certain labor relations. In § 10, Congress and the President struck a particular balance between their perception of the important, legitimate interests of servicemen and the also important, legitimate interests of the collective bargaining system. Thus, rather than the blanket exemption from limitations periods generally created by § 205, § 10(b) requires a showing of actual prejudice in the context of labor disputes before allowing such disputes to remain actionable in a legal proceeding beyond a six month period of time.

It is axiomatic that a more specific statute will take precedence over a more general one, where they address the same subject and their operations cannot be reconciled. This principle has been recognized frequently by the Supreme Court and other courts. For example, in *Morton v. Mancari*, the Court wrote, "Where there is no clear intention otherwise, a specific statute will not be controlled by a general one, regardless of the priority of enactment." 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974); *see also Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752–53, 64 L.Ed.2d 381 (1980) (where overlapping criminal sentencing provisions exist, court will follow "the principle that a more specific statute will be given precedence over a more general one, regardless of their temporal sequence"); *United States v. Sadlier*, 649 F.Supp. 1560, 1564 (D.Mass.1986) (same).

This general rule of construction is particularly appropriate where, as here, the specific provision was enacted after the general law. Congress and the President are presumed to legislate with the knowledge, and in the context, of existing laws. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85, 108 S.Ct. 1704, 1711–12, 100 L.Ed.2d 158 (1988). Thus, the intent to amend § 205 to require a showing of actual prejudice in the context of collective bargaining claims is implicit in the enactment of § 10(b). This inference is particularly appropriate in this case. Section 10(b)'s conditional tolling provision would be rendered meaningless if § 205's automatic tolling of limitations periods remained applicable in the context of labor disputes. This court does not believe that Congress and the President intended the terms of § 10(b) to be without effect.

The fact that § 205 was re-enacted in 1940 does not alter this conclusion. Rather, the court infers that if Congress and the President intended to alter the careful balance they struck in § 10(b), they would have done so explicitly. *Morton*, 417 U.S. at 550–51, 94 S.Ct. at 2482–83; *Busic*, 446 U.S. at 406, 100 S.Ct. at 1752–53.

While this court recognizes that there is a public policy, reflected in both § 205 and § 10(b), of being solicitous to servicemen, this is not the only public policy implicated in this case. Generally, statutes of limitations are "vital to the welfare of society ... They promote repose by giving security and stability to human affairs." *Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879); *see also Kay v. Johnson & Johnson*, 722 F.Supp. 874, 879 (D.Mass. 1989), *aff'd*, 902 F.2d 1 (1st Cir.1990). Section 10(b) reflects the determination that such stability and security are particularly important in the context of collective bargaining agreements. Yet in enacting § 10(b) Congress and the President remained sensitive to the fact that special

protection for servicemen is necessary and appropriate even when a collective bargaining agreement is involved. The specific exception for servicemen included in § 10 reflects the perception of Congress and the President concerning the proper balance to be struck between competing, valid aspects of the public interest. This court must effectuate that decision.

Thus, the court finds that § 10(b) of the NLRA, rather than § 205 of the Civil Relief Act, is applicable in this case. Thus, for the reasons described previously by this court and the Court of Appeals, plaintiff's present claim is time-barred.

## III. ORDER

In view of the foregoing, defendants motion for summary judgment is again hereby ALLOWED.